. BRADWAY v. MILLER.

1. EVIDENCE—ADMISSIONS—ABSTRACTS—TITLE TO LAND—QUESTION OF LAW.

An admission of counsel at the hearing that the title shown by an abstract was not marketable is not one which would bind the court, since the question is one of law.

2. VENDOR AND PURCHASER—ABSTRACTS—MARKETABLE TITLE—CONTRACTS—VALIDITY.

An agreement for a title to be shown to be marketable by an abstract thereof is good.

3. SPECIFIC PERFORMANCE—LAND CONTRACTS—ABSTRACT—TITLE TO LAND—PERFORMANCE.

Specific performance of a contract for the sale of land is not a matter of strict right, but is a question for equitable consideration, and it will not be decreed at the instance of the vendor where the contract called for a marketable title to be shown by the abstract, and the abstract showed defects which it is more or less probable might be remedied by a decree quieting title if all discoverable, recordable facts under Act No. 123, Pub. Acts 1915 (3 Comp. Laws 1915, §§ 11736-11738), were presented to a court.

4. VENDOR AND PURCHASER—MORTGAGES—FORECLOSURE BY ADVERTISEMENT—POWER OF SALE—MARKETABLE TITLE.

Where the abstract shows that the title rests upon the foreclosure of a mortgage by advertisement, but does not

show that the mortgage contained a power of sale, a marketable title is not shown, since a foreclosure by advertisement is valid only where the mortgage contains a power of sale.

5. EVIDENCE—MORTGAGES—FORECLOSURE—SHERIFF'S DEED.
    The recital in a sheriff's deed that a mortgage contains a power of sale is no evidence of that fact.

6. VENDOR AND PURCHASER—MARKETABLE TITLE—DESCRIPTION IN DEED.
    A title is not marketable which rests upon a deed which essentially misdescribes the property conveyed.

7. SAME—ABSTRACTS—MARKETABLE TITLE—PERFORMANCE—SPECIFIC PERFORMANCE.
    An agreement by the vendor in a land contract to furnish an abstract showing a marketable title is not complied with by evidence of adverse possession which might prevail in an ejectment suit or secure decree correcting the records, entitling him to specific performance of the contract.

8. SAME—ABSTRACTS—MARKETABLE TITLE—TIME TO PERFECT RECORD TITLE.
    Plaintiff's request for time to perfect his record title was properly denied by the court below, in proceedings at his instance for the specific performance of a land contract in which he agreed to furnish abstract showing marketable title. Distinguishing *Schwartz* v. *Woodruff*, 132 Mich. 513.

Appeal from Oakland; Smith, J. Submitted January 22, 1918. (Docket No. 155.) Decided March 27, 1918.

Bill by Albert Bradway and another against Frank P. Miller for the foreclosure of a land contract. Defendant filed a cross-bill to rescind the contract and for an order for the return of the amount paid thereon. From a decree for defendant, plaintiffs appeal. Affirmed.

*Henry B. Graves*, for plaintiffs.

*Albert McClatchey* and *Firmon Lush*, for defendant.

Plaintiffs, husband and wife, claim to have acquired title to, and in the year 1889 they moved to and made their home upon, land in Royal Oak township, Oakland county, described as the west half of northwest quarter and west half of east half of northwest quarter of section 7, town 1 north, of range 11 east, 120 acres, more or less. They were living on the land in March, 1916. By a writing dated March 25, 1916, defendant offered to buy the land from them and pay for it $700 an acre—$1,000 on acceptance of the offer, $2,000 on or before 10 days "from the time I am presented with an abstract of title to the said property certified to a date not earlier than the date of this agreement," $2,000 within 15 days from the expiration of the time for the payment of the above mentioned $2,000, $2,500 on May 1, 1916, and $17,500 on or before June 1, 1916, the balance, $59,000, more or less, to be paid by a mortgage due in 5 years, bearing interest at 6 per cent. The writing contains the stipulation and condition that the abstract be either a Crawford or Mathews abstract and that the same show a good and merchantable title to the said premises. An easement in the land is mentioned, and some other matters, not material here. On the same day this offer was accepted by plaintiffs, in writing, and $1,000 was paid on the purchase price. On the part of plaintiffs, the negotiations were carried on by their son, Judson Bradway.

A Crawford abstract, certified to March 30, 1916, was delivered to defendant April 1, 1916. Defendant paid $2,000 April 11, 1916, and $4,500 May 1, 1916, a total of $7,500. He paid no more. The bill in this cause was filed September 6, 1916.

Setting up the contract, the bill charges performance by plaintiffs of everything required to be done by them, willingness to complete performance of the contract on their part, default of defendant. It is

prayed that defendant be decreed to perform and in default that the land may be sold and the proceeds applied to satisfy the amount due to plaintiffs, and for a decree for any deficiency arising upon such sale. Defendant answered and denied that an abstract conforming to the contract stipulation had been furnished him, alleging that in consequence and the rescinding of the agreement by defendant plaintiffs owe him $7,-500, which sum, with interest therein, the court is asked to order plaintiffs to pay him. The answer also says that plaintiffs' authorized agent represented that the land was well worth $700 an acre and could be sold at any time for that price, that other land in the immediate vicinity of that in question and similarly located was selling for $700 and more an acre, and that defendant relied upon these representations when he entered into the agreement; that he has learned that the value of the land is less than $400 an acre, and that other as well located land in the immediate vicinity is for sale at $400 an acre. The answer does not specify the infirmity or infirmities of title shown by the abstract. The cross-bill was answered, the cause was heard in open court, the court made and filed a short opinion, and a decree was entered May 7, 1917, refusing plaintiffs relief and requiring them to pay to defendant $7,500 with interest from April 24, 1917, the day the cause was heard. A lien upon the land to secure payment of that sum is given to defendant.

The opinion filed by the trial court April 25, 1917, reads as follows:

"This is an equity action to foreclose a land contract. On March 25, 1916, plaintiff, Albert Bradway was the owner of the farm in question, about 120 acres. For farming purposes only, it may have been worth $100.00 per acre.

"From the fact that he sold unto defendant for $700.00 per acre he must have understood it was being

bought for platting into lots or for some other speculative purpose. The contract recites that the defendant bought upon the condition, 'that the abstract * * * shall show a good and merchantable title to the premises.'

"A merchantable title is synonymous with the term marketable title. A marketable title has been defined by the courts of many States. It is unnecessary to refer to them. I find the abstract does not show a marketable title. Upon the argument plaintiffs' counsel frankly conceded the title as shown is not free from doubt and not merchantable. But he insists that the court should follow the disposition made of *Schwartz* v. *Woodruff*, 132 Mich. 513, and allow plaintiffs some such period as six months in which to remove the clouds upon the title, and to tender a new abstract. Inasmuch as this would delay the platting of the property and sale of lots until 1918, it might result in serious or irreparable loss to defendant. The circumstances appear to be different from those of *Schwartz* v. *Woodruff*. The conclusion reached is that defendant is entitled to have the contract rescinded and the money he has paid returned to him together with his taxable costs."

Plaintiffs have appealed, and, accepting the definition of merchantable title given by the trial court, insist (1) that the abstract shows a merchantable title, (2) that defendant has precluded himself from claiming that the abstract does not disclose a merchantable title. No testimony tending to prove any deceit or misleading of defendant having been offered, the defendant, appellee, says that the question involved is whether the title shown by the abstract is doubtful.

Appellants deny that in argument in the court below it was "frankly conceded" that the abstract does not show a marketable title, while appellee says that the concession was in fact made and that the statement in the opinion, about the fact, must be accepted by this court.

The abstract shows title to the land in George Blumburd, or George Blumberg, or George Bloom-

burg (the name is spelled in different instruments as is indicated), in 1859. In 1872, a sheriff's deed, based upon an execution sale, was made to Philo Parsons. The judgment was obtained May 14, 1869, and the levy was made February 3, 1870. George Bloomburg and wife mortgaged the land November 13, 1868, to Stephen Baldwin, to secure payment of a debt due two years after that date, who assigned the mortgage January 2, 1869, to Reuben Adams. It does not appear that the mortgage contained a power of sale. It was foreclosed by advertisement, the land sold in two parcels, and a sheriff's deed given, dated May 9, 1874, which, however, describes the premises as being in town 2 north. The published notice of sale described them as in town 1 north. Reuben Adams, the assignee of the mortgagee, was the vendee, and in April, 1875, he gave a quitclaim deed of the premises in question to Israel Bickford,

"Hereby intending to convey all the right, title and interest the first party has acquired in said premises by reason of the foreclosure of a mortgage given by George Bloomburg and wife to Stephen Baldwin, recorded * * *, and the said party of the first part authorized the said second part to receive all moneys paid for the redemption of said premises or any part of the same as he might of done."

A quitclaim deed was made April 10, 1875, in which Philo Parsons and Ann Eliza Parsons are described as grantors, conveying the land to Israel Bickford; Philo Parsons only signed and acknowledged the deed. Israel Bickford and wife conveyed the land in February, 1876, to Rollin Bickford, and Rollin Bickford alone conveyed to plaintiff Albert Bradway in March, 1883. The deed does not state whether Rollin Bickford was a married man. The abstract, as printed in the record, contains also two affidavits, appearing therein as numbers 18 and 19, made apparently in

March, 1916, but showing no recording date. The first of these is to the effect that Reuben P. Adams, of Southfield, Oakland county, Michigan, "who died about the year 1892," left surviving him a wife, who died "about 1896." The other is to the effect that the wife of Rollin Bickford died while living upon the premises in question and prior to March 7, 1883.

It is not claimed that defendant ever pointed out particular defects in the title, and both plaintiffs and Judson Bradway testified that no complaint was ever made to them about the abstract or the title or that delay in making payments and in closing the transaction was the result of a delay in making an examination thereof by defendant's attorney. It was at the hearing that defendant first pointed out the alleged defects. But defendant testified that the payments were made before the abstract had been examined, in reliance upon an assurance given by Judson Bradway that the title was good, and if not, money paid would be refunded. He testified further that he explained to Albert Bradway that the delay was caused by the absence of his attorney, that when he received the opinion of his attorney he notified Judson Bradway by 'phone shortly after June 6, 1916, that the title was defective, referred him to his attorney, said he would not purchase, and was told that no better title would be furnished. The defects alleged are (1) that the deed from Philo Parsons to Israel Bickford, not signed by Ann Eliza Parsons, is suspicious, and if the land was a homestead, and she was his wife, it was void, (2) the mortgage from George Bloomburg and wife to Stephen Baldwin contained no power of sale (as shown by abstract) and therefore the foreclosure by advertisement was presumptively void, (3) the deed given in the foreclosure proceeding misdescribes the land, (4) the deed from Rollin Bickford to Albert Bradway is not signed by the wife of Bickford and the

property may have been a homestead and the deed therefore void; the affidavit of Lydia Blodgett to the effect that the wife died before the deed was made was suspicious because sworn to before Judson Bradway, (5) the deed from Adams to Israel Bickford is a limited quitclaim deed and does not purport to convey all of the right, title and interest of the grantor but only so much as he acquired by reason of the foreclosure proceeding; it does not appear whether Adams was a married man.

OSTRANDER, C. J. (*after stating the facts*). 1. Whether an abstract shows a title is a question of law. Lawyers may differ in opinion, but nevertheless the question when presented to a court must be answered as the applicable law requires. Therefore, an admission of counsel at the hearing, if one was made, that the title shown by the abstract was not marketable, while it would naturally affect the court and perhaps prevent further examination of the question by the court, is not one which would bind the court.

2. An agreement for a title to be shown to be marketable by an abstract thereof is good. *Lake Erie Land Co.* v. *Chilinski,* 197 Mich. 214; *Ogooshevitz* v. *Arnold,* 197 Mich. 203. See, also, *Ford* v. *Wright,* 114 Mich. 122, 130; *Walker* v. *Gillman,* 127 Mich. 269.

3. Specific performance of a contract for the sale of land is not matter of strict right and whether it will be ordered is a question for equitable consideration. A purchaser may suffer a loss if compelled to take a doubtful title, while the vendor can usually suffer only the inconvenience of delay, if his title is good and the purchaser is released. Maupin on Marketable Title, p. 708. Nor, in a case like this, should what appears upon the abstract be confused with or enlarged by what it is more or less probable would appear if all discoverable, recordable, facts were presented or with

provable facts showing a title good in law but not of record; as, for example, a title by adverse possession. In this connection, it is to be observed that although the statute, Act No. 123, Public Acts of 1915 (3 Comp. Laws 1915, §§ 11736-11738), permits affidavits detailing certain facts to be recorded and makes such recorded affidavits *prima facie* evidence, in courts, of the facts and circumstances contained, such affidavits may and often do merely point to evidence which would, if not disputed, support a decree quieting title or one reforming an instrument.

4. A foreclosure of a mortgage by advertisement is valid only where the mortgage contains a power of sale, and an agreement like the one before us is not complied with if the title rests upon a foreclosure by advertisement and the abstract does not show that the mortgage contained a power of sale. The recital in the sheriff's deed that the mortgage contains the power is no evidence of the fact. *Bryan* v. *Straus Bros. & Co.*, 157 Mich. 49. This was an action of assumpsit by vendors upon a land contract.

5. A title is not marketable which rests upon a deed which essentially misdescribes the property conveyed; as when, as in this case, the land is described in the deed as being in a township other than the one in which the land which is abstracted lies.

6. Plaintiffs say that inasmuch as Reuben Adams, vendee in the deed given in the foreclosure proceeding, afterwards executed the conveyance to Israel Bickford, who also acquired such title as Philo Parsons took upon the execution sale, it is immaterial as affecting title whether the foreclosure was valid or invalid, or whether the foreclosure deed correctly describes the land. Parsons, the purchaser at execution sale, had the right to redeem from the mortgage which Reuben Adams owned. Israel Bickford acquired Parsons' interest and right and also acquired Adams'

interest. Adams' quitclaim deed, if not a conveyance of title, may be treated as at least an assignment. of the mortgage. There was then no outstanding interest or. title. It is further the argument of plaintiffs that the mortgage was either foreclosed or it was not. If not, it became due in November, 1870, since which date more than 45 years have elapsed. But, clearly, plaintiffs' title rests either upon the foreclosure of a mortgage or upon the deed from Mr. Parsons, or upon both, and the validity of each is doubtful. That plaintiffs as defendants might maintain title in an ejectment suit or secure decrees correcting the records, does not answer the specifications of the contract which calls for a title shown by the abstract of title to be merchantable. One informed about all the facts might be willing to purchase the land, accepting a deed from plaintiffs, but that is not the test to be applied. See *Ford* v. *Wright, Walker* v. *Gillman, supra; Stange* v. *Gosse,* 110 Mich. 153.

7. In *Schwartz* v. *Woodruff,* 132 Mich. 513, the action was like the one at bar, but there was no question there of an abstract title. The agreement there was for a good and sufficient conveyance in fee simple, free and clear, etc. The purchase price being all due and a conveyance tendered the purchaser, he declined to accept it upon the sole ground that he did not have the money. There was, in fact, a defective title of record, but the defect was one which the vendor could remedy. And so it was held that as an injustice would result to the defendant purchaser if he was compelled to pay the difference between what could be obtained for a questionable title and what he had agreed to pay for a title free from question, the decree required the vendor to obtain and record the conveyance which would perfect the record title. In the case at bar, the plaintiffs ask for time to perfect their record title. The court below refused this for a reason stated in

the opinion. This reason seems to me to be based upon facts fairly inferable from the evidence in the case and to be sufficient.

The decree is affirmed, with costs to defendant.

BIRD, MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.