430 Mich. 590 (1988)
424 N.W.2d 272
In re FINLAY ESTATE
THOMAS
v.
FINLAY
Docket No. 79783, (Calendar No. 2).
Supreme Court of Michigan.
Argued December 8, 1987.
Decided June 7, 1988.
Touma, Watson, Nicholson, Whaling, Fletcher & DeGrow, P.C. (by Douglas S. Touma), for the petitioners.
Campbell, Keenan & Harry (by C. Daniel Harry) for the respondents.
ARCHER, J.
We granted leave to consider two issues: (1) whether the former Probate Code must be applied because the parties so stipulated in the probate court; and (2) whether the law applicable to this case is the former Probate Code or the Revised Probate Code, MCL 700.1 et seq.; MSA 27.5001 et seq.
We hold that the RPC is the applicable law. The RPC became effective July 1, 1979.[1] MCL 700.992(a); MSA 27.5992(a) states that the RPC applies to proceedings begun after that date. The original proceedings began in the probate court after July 1, 1979; therefore, the RPC clearly applies.
We also hold that the parties' stipulation to apply the former Probate Code was a stipulation of law that does not bind a court.
We affirm the decision of the Court of Appeals.
FACTS
The facts of this case are undisputed. On June 22, 1967, the decedent, Linda L. Finlay, married John R. Finlay. John R. Finlay had four children from a prior marriage. Linda L. Finlay had not been married before and had no children. During the course of her marriage to John R. Finlay, Linda L. Finlay bore no children, nor did she adopt John R. Finlay's children.
On May 13, 1978, Linda L. Finlay executed a will. In the will, she devised a parcel of property *593 in Bear Lake, Michigan to her sister's children[2] and gave all of the rest to her husband, John R. Finlay. The will further provided that "[i]n the event my said husband, John R. Finlay, predeceases me, then I give, devise and bequeath all the rest, residue and remainder of my property and estate to my husband's children, namely Michael J. Finlay, Marianne L. Finlay, Maureen D. Finlay and Gregory T. Finlay, in equal shares."
On February 20, 1979, Linda L. Finlay and John R. Finlay were divorced. The judgment of divorce was executed by both parties and contained a property settlement between the parties. After the divorce, Linda L. Finlay did not execute a new will, nor did she expressly revoke her old one.
On December 23, 1984, Linda L. Finlay was killed in an automobile accident. Her only remaining heirs-at-law are her two sisters, Jacquelynne A. Russell and Patricia Thomas. Russell and Thomas are the appellants in this case. On February 12, 1985, appellants filed a petition to commence these proceedings in the Probate Court for the Thirty-First Judicial Circuit. Appellants sought to admit the Last Will and Testament of Linda L. Finlay as to the property in Bear Lake but contended that the residue passed by intestacy. On April 25, 1985, appellants moved to withdraw this petition. Instead, they sought to have the entire estate distributed through intestacy. In opposition, appellees contended that the residue of the estate should pass to them under the terms of the will.
*594 The parties filed cross-motions for summary disposition. The court conducted oral argument on June 17, 1985. At oral argument, the parties stipulated and the probate court found that the applicable law was the former Probate Code, not the RPC.
Appellees appealed the probate court's decision ordering intestate distribution of the estate. A unanimous Court of Appeals reversed, holding that the RPC should have been applied.[3] The Court relied on MCL 700.124; MSA 27.5124. The relevant subsection is MCL 700.124(2); MSA 27.5124(2). This subsection provides:
If after executing a will the testator is divorced or his marriage annulled, the divorce or annulment revokes any disposition or appointment of property made by the will to the former spouse, any provision conferring a general or special power of appointment on the former spouse, and any nomination of the former spouse as a personal representative, unless the will expressly provides otherwise. Property prevented from passing to a former spouse because of revocation by divorce passes as if the former spouse failed to survive the decedent and other provisions conferring some power or office on the former spouse are interpreted as if the spouse failed to survive the decedent. Provisions not revoked by any means except the operation of this subsection are revived by testator's remarriage to the former spouse. A decree of separation which does not terminate the status of husband and wife is not a divorce for purposes of this section. Any other change of circumstances does not revoke a will. [Emphasis added.]
This statute requires that a former spouse's share be treated as if he failed to survive the decedent. In this case, the appellees were entitled to receive *595 the former husband's share, as expressed in the will.
The Court of Appeals also held that it was not bound to accept the parties' stipulation that the former Probate Code applied.[4]
Appellants moved for a rehearing before the Court of Appeals. The motion was denied. Appellants applied for leave to appeal, and we granted leave to appeal limited to the two issues determined by the Court of Appeals.[5]
I
The threshold issue is whether we are bound to accept the parties' stipulation that the former Probate Code applies. We hold that we are not bound.
The stipulation in the lower court was a stipulation of law. It is well established that a court is not bound by the parties' stipulations of law. See, e.g., Rice v Ruddiman, 10 Mich 125, 138 (1862), and Bradway v Miller, 200 Mich 648, 655; 167 NW 15 (1918).[6] It is within the inherent power of a court, as the judicial body, to determine the applicable law in each case. To hold otherwise could lead to absurd results; for example, parties could force a court to apply laws that were in direct contravention to the laws of this state. It would also allow the parties to stipulate to laws that were obsolete, overruled, or unconstitutional. On the appellate level, this would result in a tremendous *596 waste of judicial resources, since such case law would have no precedential value.
II
The final issue is whether the applicable law is the former Probate Code or the RPC. We hold that the controlling law is the RPC.
The decedent and John Finlay were divorced February 20, 1979. On that date, the former Probate Code was in effect.
The RPC became effective July 1, 1979. This date was after the divorce, but before the parties originally commenced these proceedings in probate court. The RPC controls this case because MCL 700.992; MSA 27.5992 provides that it is to apply to proceedings begun after the effective date of the statute. Paragraph (a) of MCL 700.992; MSA 27.5992 provides:
Except as provided elsewhere in this act, on the effective date of this act:
(a) This act applies to any proceedings in court then pending or thereafter commenced regardless of the time of the death of decedent except to the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application....
According to paragraph (a), the RPC applies to a proceeding commenced after the effective date of the act unless: (1) the court opines that the former Probate Code should be applied for the interest of justice, or (2) it is infeasible to apply the RPC. There is no evidence that the former Probate Code should be applied to further the interest of justice. Similarly, there is no evidence that it is infeasible to apply the RPC. Accordingly, we hold that the *597 RPC is the applicable law. In addition to paragraph (a), there are three other paragraphs in MCL 700.992; MSA 27.5992. Each paragraph is preceded by the letters (b), (c) or (d). The phrase "any proceeding" appears twice in MCL 700.992; MSA 27.5992; it appears in paragraph (a) and paragraph (c). Paragraph (c) provides:
An act done before the effective date in any proceeding and any accrued right is not impaired by this act. If a right is acquired, extinguished, or barred upon the expiration of a prescribed period of time which has commenced to run by the provisions of any statute before the effective date, the provisions shall remain in force with respect to that right.
Appellants argue that paragraph (c) precludes the application of the RPC to this case. Appellants present a two-fold argument for the application of this section. First, they argue that the divorce revoked the will and extinguished appellees' rights in the estate. Second, the divorce and simultaneous revocation created accrued rights in appellants, enabling them to inherit by intestate succession. These arguments were adopted by the probate court.
We disagree with the probate court's opinion and present a two-fold rejection of appellants' arguments.
First, MCL 700.992(c); MSA 27.5992(c) is not applicable because no "act" of the circuit court is impaired when the RPC is applied to these facts.
Appellants argue that the divorce decree simultaneously revoked the will under the former Probate Code, thereby causing appellees' rights to be extinguished and appellants' rights to accrue. This contention misapplies the cases interpreting the former Probate Code.
*598 The relevant portion of the former Probate Code is MCL 702.9; MSA 27.3178(79). It provided:
No will nor any part thereof shall be revoked, unless by burning, tearing, canceling or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some other will or codicil in writing, executed as prescribed in this chapter; or by some other writing, signed, attested and subscribed in the manner provided in this chapter for the execution of a will; excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator. [Emphasis added.]
Neither party contends that the will was physically revoked by the testatrix. The issue concerns the last clause of the statute providing for revocation inferred from a change in circumstances or condition.
Early cases indicated a divorce and property settlement, ipso facto, revoked a prior will if the former spouse was a legatee. See Wirth v Wirth, 149 Mich 687; 113 NW 306 (1907), and In re McGraw Estate, 233 Mich 440; 207 NW 10 (1926). According to these cases, a divorce decree was a "change in circumstances" sufficient to cause an immediate revocation of the will by implication of law. These cases followed the Court's earlier decision in Lansing v Haynes, 95 Mich 16; 54 NW 699 (1893). In Lansing, at 20, the Court held:
By the decree of divorce in this case, the parties became as strangers to each other, and neither owed to the other any obligation or duty thereafter. There was, therefore, a complete change in these relations, within the language above quoted....
However, the law of implied revocation was *599 substantially changed by our decision in In re Blanchard Estate, 391 Mich 644; 218 NW2d 37 (1974), in which we reinterpreted Lansing:

Lansing established the proper rule for determining whether a revocation should be implied by law, to wit: such presumption must be reasonable and must take in consideration all of the circumstances. It follows that revocation should not automatically occur by operation of law, but only when the conditions or circumstances warrant such operation.
After the Lansing decision, and purportedly based upon that decision, came Wirth v Wirth, 149 Mich 687; 113 NW 306 (1907) and In re McGraw's Estate, 228 Mich 1; 199 NW 686 (1924). In these latter cases there are statements to the effect that a divorce coupled with a property settlement creates a presumption of revocation which cannot be rebutted by the acts or declarations of the divorced parties. These statements are, in fact, contrary to the decision in Lansing which urges a "common sense" and "reasonable" interpretation of the law. An irrebuttable presumption leaves no room for reason to fall upon fact nor for common sense to bring the application of the law into the world of reality.
* * *
Neither statute nor common law justify a rule that there is an irrebuttable presumption (a conflict of terms) of revocation of a prior will arising upon divorce and property settlement. To the extent that Wirth and McGraw give credence to such a claim, they are overruled.[[7]]
In re Blanchard held that a divorce and property settlement were insufficient, ipso facto, to revoke a will under the former Probate Code. A revocation could only take effect if the court found "`subsequent changes in the condition or circumstances of the testator'" sufficient to justify the *600 implication.[8] In some cases, as in In re Blanchard, the court might find that the testator's intent would be thwarted by the presumption of revocation.[9] After In re Blanchard, a will was not revoked until the probate court determined whether the testator's post-divorce behavior indicated an intent to rebut the presumption of revocation.
Accordingly, application of the RPC, § 124(2) to these facts does not impair any "act" of the circuit court in decreeing the divorce of the testator, but merely alters the presumed intent of the testator following her divorce.
Second, MCL 700.992(c); MSA 27.5992(c) is not applicable because neither party acquired any accrued[10] or nonaccrued rights in the estate until Linda Finlay died.
Wills, by their nature, are ambulatory until the testator dies. Until the death of the testator, the potential heirs and legatees have a mere expectancy interest.[11] This interest has been defined in the following manner:
"An expectancy or chance is a mere hope, unfounded in any limitation, provision, trust or legal *601 act whatever; such as the hope which an heir apparent has of succeeding to the ancestor's estate. This is sometimes said to be a bare or mere possibility, and, at other times, less than a possibility. But it is less than a possibility in the specific sense of the term possibility. For, it is no right at all, in contemplation of law, even by possibility; because, in the case of a mere expectancy, nothing has been done to create an obligation in any event; and where there is no obligation, there can be no right because right and obligation are correlative terms."
Smith, An Original View of Executory Interest in Real and Personal Property, § 71, p 23 (1845), as cited in Alexander, The concept of property in private and constitutional law: The ideology of the scientific turn in legal analysis, 82 Colum L R 1545, 1571-1572, n 69 (1982). This definition makes it clear that potential heirs and legatees do not have a right in an estate until the testator dies.[12]
CONCLUSION
We hold that the parties' stipulation of law does not bind a court to apply the former Probate Code. We also hold that the RPC is the applicable law. We affirm the decision of the Court of Appeals.
RILEY, C.J., and BRICKLEY, CAVANAGH, BOYLE, and GRIFFIN, JJ., concurred with ARCHER, J.
LEVIN, J. (dissenting).
Absent evidence contradicting *602 the presumption[1] that divorce constitutes a revocation implied by law, Linda L. Finlay's will was revoked by her divorce from John R. Finlay on February 20, 1979, before the July 1, 1979 effective date of the Revised Probate Code.[2] The enactment of the Revised Probate Code did not revive the revoked will.
I would reverse and remand to the probate court for further proceedings consistent with this opinion.
NOTES
[1] MCL 700.991; MSA 27.5991.
[2] The bequest provided, in pertinent part:

I give, devise and bequeath any interest which I may have in my sole name at the time of my decease to real property situated in the Township of Bear-Lake, Manistee County, State of Michigan, ... to the children of my sister, Jacquelynne A. Russell, me surviving share and share alike.
[3] In re Finlay Estate, 154 Mich App 350, 359; 397 NW2d 307 (1986).
[4] Id. at 358.
[5] In re Finlay Estate, 428 Mich 909 (1987).
[6] See also Heifetz v Bank of America Nat'l Trust & Savings Ass'n, 147 Cal App 2d 776, 781; 305 P2d 979 (1957), and Denver & R G R Co v Johnson, 50 Colo 187, 190; 114 P 650 (1911). These cases hold that a stipulation of law does not preclude an appellate court from reviewing the issue on appeal.
[7] Id. at 651-654.
[8] Id. at 650.
[9] Id. at 652.
[10] The word "accrued" is closely analogous to "vested." In an Ohio case involving a will, "accrued" was defined as

equivalent, in its meaning, to the word "vested," which necessarily implies that something has been imparted to, or conferred upon a third person, over which he may have the immediate control by possession, or the present right to future possession, of which he can not be deprived without his assent. It must be a right he can legally assert, independent of any future condition of things, as well as any subsequent change of the existing law. [Hartshorne v Ross, 13 Ohio Dec Reprint 10; 2 Cincinnati Sup Ct Rpts (Disn) 15, 21-22 (1858).]
[11] See Restatement Property, § 315, p 1791 (1940). See also comment a of this section, pp 1792-1793.
[12] This rule has been stated many ways. See, e.g., In re Churchill Estate, 230 Mich 148, 155; 203 NW 118 (1925), stating, "estates given by will take effect and become vested on the death of the testator ...", In re Jamieson Estate, 374 Mich 231, 247; 132 NW2d 1 (1965), stating, "[a] will, though often made while death is contemplated as a remote event, is to speak from the time the death takes place"; and In re Marriage of Stephenson, 121 Ill App 3d 698, 700; 77 Ill Dec 142; 460 NE2d 1 (1983), stating, "nemo est haeres viventis"  no one can be an heir during the life of an ancestor.
[1] MCL 702.9; MSA 27.3178(79) provided:

No will nor any part thereof shall be revoked, unless by burning, tearing, canceling or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some other will or codicil in writing, executed as prescribed in this chapter; or by some other writing, signed, attested and subscribed in the manner provided in this chapter for the execution of a will; excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator. [Emphasis added.]
"[S]ubsequent changes in the condition or circumstances of the testator" that may effect a revocation implied by law include a divorce and accompanying property settlement where the former spouse was to receive under the will. In re Blanchard Estate, 391 Mich 644; 218 NW2d 37 (1974); In re McGraw Estate, 233 Mich 440; 207 NW 10 (1926); Wirth v Wirth, 149 Mich 687; 113 NW 306 (1907); Lansing v Haynes, 95 Mich 16; 54 NW 699 (1893).
The majority notes that in In re Blanchard Estate the Court retreated from the view that a divorce and property settlement created an irrebuttable presumption that the will was revoked. In so ruling, the Court said that all the "subsequent changes in the conditions or circumstances of the testator" must be considered. For example, if the testator divorced and then remarried, both acts should be considered in applying MCL 702.9; MSA 27.3178(79). Simply stated, the "words, `subsequent,' `condition' and `circumstances,' according to their generally accepted meaning, cannot be restricted to the facts of divorce and property settlement  and no more." Id., pp 653-654. In re Blanchard Estate merely states that "[e]ach case must be analyzed within the perimeters of its particular facts," id., p 653, and there is not a conclusive presumption.
[2] MCL 700.1 et seq.; MSA 27.5001 et seq.