654 N.W.2d 563 (2002)
Linda MACK, Plaintiff-Appellee,
v.
CITY OF DETROIT, Defendant-Appellant.
Docket No. 118468, COA No. 214448.
Supreme Court of Michigan.
November 19, 2002.
In this cause a motion for rehearing is considered and it is DENIED.
CORRIGAN, C.J., concurring.
I concur in the order denying plaintiff's motion for rehearing. I write separately to address Justice CAVANAGH'S comparison of this case to my concurring statement in Haji v. Prevention Ins. Agency, Inc., 196 Mich.App. 84, 88-90, 492 N.W.2d 460 (1992). The concerns surrounding the questionable procedure that the trial court employed in Haji are not present here.
In Haji, on the date set for trial, the trial court sua sponte raised issues never previously identified or argued in the pleadings or in the defendants' motion for summary disposition. Id. at 85-86, 88, 492 N.W.2d 460. The court invited argument on the issues at that time, with no opportunity whatsoever for preparation. The court then granted summary disposition for the defendants on the issues that the trial court itself had raised. Id. at 85-87, 89, 492 N.W.2d 460.[1] In my concurrence, I deemed the trial judge's injection and decision "unjustified." I disagreed with the trial court's procedure because the plaintiff was sandbagged by the court. He had no advance notice, opportunity to prepare, or respond. Id. at 90, 492 N.W.2d 460.
Unlike Haji, this Court decided the very issue presented, i.e, whether the city of Detroit's charter provided plaintiff a private cause of action against the city on the basis of sexual orientation discrimination. Our research led to the conclusion that, regardless of whether the charter attempted to create such a cause of action, the governmental tort liability act (GTLA), M.C.L. § 691.1407, precluded the cause of action.
This Court did not inject a novel issue. We addressed the issue raised on appeal and reached a conclusion on the basis of thorough legal research. While members of this Court addressed the potential impact of the GTLA on this case at oral argument, we are not obligated to provide parties with advance notice of our decision before issuing an opinion. We were not required to advise plaintiff that the GTLA precluded her alleged cause of action and to afford her another opportunity to present argument. Such an unprecedented procedure would hinder our ability to decide cases promptly. It would add another step to the appellate process by giving parties yet another "bite at the apple."
Moreover, this Court is not constrained to simply adopt the reasoning advanced by one of the parties. If our research leads to a different line of reasoning that correctly resolves the issues presented, we are not obliged to reject the correct view merely because neither party has proposed it. As long as we address the particular issue presented, the theories that our research uncovers in an attempt to decide the issue are properly before this Court.
*564 YOUNG, J., concurring.
I concur with the denial of plaintiff's motion for rehearing. I write separately to address the concerns raised by Justice CAVANAGH in his dissenting statement.
In our opinion, 467 Mich. 186, 649 N.W.2d 47 (2002), plaintiff lost part of her appeal because there is no cause of action against a governmental entity for discrimination based on sexual orientation. Justice CAVANAGH'S due process arguments fail to consider that if we remanded plaintiff's sexual orientation discrimination claim, no possible amendment would have been successful because the underlying right she sought to vindicate could not be secured under state law. Thus, a remand on that claim would have caused her to engage in a futile exercise.[1]
That the plaintiff has no cause of action for sexual orientation discrimination is the fundamental fact that distinguishes this case from the case Justice CAVANAGH relies on for his due process criticism, Brinkerhoff-Faris Trust & Sav. Co. v. Hill, 281 U.S. 673, 50 S.Ct. 451, 74 L.Ed. 1107 (1930). Brinkerhoff stands for the proposition that a court cannot change a procedural rule so as to deprive a plaintiff of an otherwise valid cause of action without offending due process. However, this due process principle presupposes that the plaintiff has a valid claim. Here, plaintiff has no valid claim for sexual orientation discrimination. Thus, the predicate for Brinkerhoff to apply, that the plaintiff have a valid cause of action that a retroactive change in procedural law now makes impossible to bring, is missing. Accordingly, Brinkerhoff is not germane to the situation before us in Mack.
Justice CAVANAGH also objects to the Court advancing legal theories not raised by the parties. I am mindful of the important role the adversarial process plays in our judicial system, particularly regarding the identification of disputed issues. Yet, the adversarial process aids a court's legal resolution, it does not dictate it. Where the adversarial process fails to provide valuable assistance, a court's duty to correctly expound the law is not excused. Our case law clearly points this out:
It is well established that a court is not bound by the parties' stipulations of law. See, e.g., Rice v. Ruddiman, 10 Mich. 125, 138 (1862), and Bradway v. Miller, 200 Mich. 648, 655, 167 N.W. 15 (1918). It is within the inherent power of a court, as the judicial body, to determine the applicable law in each case. To hold otherwise could lead to absurd results; for example, parties could force a court to apply laws that were in direct contravention to the laws of this state. It would also allow the parties to stipulate to laws that were obsolete, overruled, or unconstitutional. On the appellate level, this would result in a tremendous waste of judicial resources, since such case law would have no precedential value. [In re Finlay Estate, 430 Mich. 590, 595-596, 424 N.W.2d 272 (1988) ].[2]
Just as parties cannot place the law beyond the reach of the Court by stipulation, they cannot avoid the application of controlling law by failing to address it.
*565 Simply put, the issue of preemption by state law was squarely before this Court in Mack and the specific preemptive effect of governmental immunity was raised by the Court at oral argument. However, plaintiff failed adequately to explain to this Court why the governmental tort liability act did not prohibit the city's alleged creation of a cause of action for sexual orientation discrimination at either oral argument or, more tellingly, even in plaintiff's motion for rehearing. Plaintiff's adversarial shortcomings do not prevent this Court from following the law.
Further, I wish to point out how unusual is Justice CAVANAGH'S assertion that our sua sponte raising and deciding the McCummings v. Hurley Medical Ctr., 433 Mich. 404, 446 N.W.2d 114 (1989), issue somehow runs afoul of some established "rule." If such a "rule" exists, it certainly is not one that the United States Supreme Court observes. I simply note by way of example that the United States Supreme Court has sua sponte raised and decided issues neither raised nor briefed by the parties on many occasions and in some of the most important cases it has decided. See, for example, Erie R Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In fact, that Court recently addressed an issue that was not briefed by the parties and was raised only indirectly at oral argument by the Court, notwithstanding a dissent critical of the Court's doing so. See Kolstad v. American Dental Ass'n, 527 U.S. 526, 540, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) (citing cases where the Court had previously done so, Justice O'Connor wrote for the majority that "[t]he Court has not always confined itself to the set of issues addressed by the parties"). Likewise, this entire Court recently decided an issue not raised or briefed by the parties. See Federated Publications, Inc. v. Lansing, 467 Mich. 98, 649 N.W.2d 383 (2002). As suggested above, the highest court's duty is to the law itself, not fidelity to the parties' vision (or lack thereof) of the law.
Justice CAVANAGH'S assertion that this Court deprived plaintiff of a due process right by finding that she was required to plead in avoidance of governmental immunity ignores the precedent set by this Court. A point we did not make in Mack, but could have, is that a review of Michigan law before Mack would hardly suggest that plaintiff need not plead in avoidance of governmental immunity. As stated in Mack, the McCummings holding was an aberration in Michigan and largely ignored by Michigan courts after it was decided. Opinions from this Court post-McCummings support this conclusion and refute any contention that governmental immunity was established solely as an affirmative defense. This truth is evident, in part, because the Mack decision was foreshadowed in several recent cases that all stated that a plaintiff must plead in avoidance of governmental immunity. See Hanson v. Board of Co. Rd. Comm'rs of County of Mecosta, 465 Mich. 492, 499, 638 N.W.2d 396 (2002) ("A plaintiff making a claim of inadequate signage, like a plaintiff making a claim of inadequate street lighting or vegetation obstruction, fails to plead in avoidance of governmental immunity.") (quoting Nawrocki v. Macomb Co. Rd. Comm., 463 Mich. 143, 183, 615 N.W.2d 702 (2000)); (Haliw v. Sterling Heights, 464 Mich. 297, 304, 627 N.W.2d 581 [2001]) ("First, it must be determined whether the plaintiff has pleaded a cause of action in avoidance of governmental immunity."). In fact, although he criticizes the fact that we overruled McCummings in Mack, Justice CAVANAGH himself subscribed to the Mack postulate post-McCummings:
The governmental tort liability act, M.C.L. § 691.1407; MSA 3.996(107), *566 waives the state's immunity from liability in certain limited areas. However, in order to successfully bring suit against an agency of the state, one has to plead in avoidance of governmental immunity and prove an underlying cause of action. See Canon v. Thumudo, 430 Mich. 326, 422 N.W.2d 688 (1988). [Klinke v. Mitsubishi Motors Corp., 458 Mich. 582, 615, n. 19, 581 N.W.2d 272 (1998) (KELLY, J., dissenting and CAVANAGH, J., concurring with Justice KELLY) (emphasis added) ].[3]
In light of these recent opinions by this Court, it is doubtful that plaintiff had no notice of the appropriate procedural rule.
Finally, Justice CAVANAGH'S claim that the acts plaintiff complained of were ultra vires, and thus outside governmental immunity, is simply incorrect. The actions plaintiff challenged"job reassignment, distribution of vacation time, and determining the extent to which department officers are involved with investigations are quintessential governmental functions as they are inherent in running a police department. 467 Mich. at 204, 649 N.W.2d 47. The fact that the motivation to do one of these acts may have been the product of discriminatory animus does not convert the act itself into an ultra vires one.
For these reasons, I am unpersuaded by the arguments by plaintiff and Justice CAVANAGH and concur with the denial of the motion for rehearing.
CAVANAGH, J., dissenting.
I respectfully dissent from the majority's refusal to grant rehearing. The Court's opinion in Mack v. City of Detroit, 467 Mich. 186, 649 N.W.2d 47 (2002), violated plaintiff's right to due process guaranteed by U.S. Const, Am XIV. The opinion was issued without affording plaintiff any opportunity to brief or argue a dispositive issue, i.e., which party carries the burden of pleading sovereign immunity, raised for the first time by this Court on issuance of the opinion. Neither was the plaintiff afforded any opportunity to brief or have a fair chance to respond to a second dispositive issue, i.e., the applicability of the government tort liability act. MCL 691.1407.
This Court violated plaintiff's right to procedural due process by denying her an opportunity to argue the merits of her claim on the basis of the Court's overruling McCummings v. Hurley Medical Center, 433 Mich. 404, 446 N.W.2d 114 (1989). In McCummings, the Court clarified that a defendant bore the burden of pleading governmental immunity as an affirmative defense. The Court also amended MCR 2.111(F)(3)[1] to clarify this rule by a separate order set forth in the opinion.
The amendment ... [was] intended to make clear that a governmental agency... which seeks to invoke the immunity from tort liability ... must raise that immunity as an affirmative defense pursuant to amended MCR 2.111(F)(3). [McCummings at 412, 446 N.W.2d 114.]
Relying on this express statement of law, and in response to defendant's absolute failure to raise the defense, plaintiff did not plead in avoidance of immunity.
*567 In apparent recognition of the injustice that retroactive application of the new rule would cause to plaintiffs with pending governmental immunity claims, the Court clarified that the Court of Appeals may permit amendment by plaintiffs with pending claims. Mack at 203, n. 20, 649 N.W.2d 47. To avoid a manifestly unfair result, that same discretion should be applied to plaintiff's claim against the city of Detroit. Otherwise, the Court's refusal to grant the motion for rehearing violates procedural due process guarantees as defined in Brinkerhoff-Faris Trust & Sav. Co. v. Hill, 281 U.S. 673, 50 S.Ct. 451, 74 L.Ed. 1107 (1930). In Brinkerhoff-Faris, the United States Supreme Court held that the Missouri Supreme Court denied the plaintiff's due process rights by refusing to hear its equal protection claim on the ground that the plaintiff was guilty of laches for failure to bring the action in the tribunal below, the state tax commission, where the Missouri Court had previously held six years earlier that no equitable action could be had in that particular tribunal. The United States Supreme Court noted:
No one doubted the authority of the Laclede case [limiting the tax tribunal's jurisdiction] until it was expressly overruled in the case at bar.... The possibility of relief before the tax commission was not suggested by anyone in the entire litigation until the Supreme Court filed its opinion.... Then it was too late for the plaintiff to avail itself of the newly found remedy. [Id. at 677.]
The plaintiff in Brinkerhoff-Faris had filed a motion for rehearing, and the Supreme Court held that the state court's refusal to grant the rehearing "transgressed the due process clause of the Fourteenth Amendment." Id. at 677-678. Similarly, if the Court denies this motion for rehearing, plaintiff will have been denied an opportunity to litigate her claim or, as stated by the Supreme Court, she will have been deprived of her property (the claimed invasion of her right to be free from discrimination because of her sexual orientation) without affording her any opportunity to be heard.
This respect for a party's right to fair procedures in the judicial process has been expressly recognized by members of this Court. In Haji v. Prevention Ins. Agency, Inc., 196 Mich.App. 84, 492 N.W.2d 460 (1992), the plaintiff claimed damages against his employer for failing to procure worker's compensation insurance for him and for failing to notify him of such failure. The opinion per curiam related the following:
On the day set for trial, the trial court suggested tying up some "loose ends," and invited argument regarding whether there had been consideration for the alleged oral contract between the parties. The court appears to have raised this issue spontaneously, because it does not appear in the pleadings and there was no motion pending before the court.... After hearing comments of counsel on that issue and others raised by the court, the court ruled [in favor of defendant]. The procedure followed in this case was, at best, questionable. We do not address the procedural irregularities, however, because each of the court's conclusions on the merits was erroneous, and we reverse on that ground. [Id. at 86-87, 492 N.W.2d 460.]
In spite of the Court's ruling on other grounds, Judge Corrigan submitted the following concurring statement:
I write separately to emphasize my concern about the procedural injustice manifest in this record. The circuit judge committed a procedural error of the most basic sort when it dismissed, on his own motion, on the date set for *568 trial, plaintiff's contract and negligence claims without prior notice to plaintiff or a fair opportunity to be heard.
The judge had heard and denied defendants' motion for summary disposition nearly a year earlier. On the date set for trial, the trial judge unilaterally reopened consideration of summary disposition, introduced new legal theories, and then heard argument on two questions: whether plaintiff furnished consideration for the alleged oral contract and whether the defendants owed a duty to the plaintiff upon which a negligence claim could be based. Neither issue had been raised in defendants' earlier motion for summary disposition. After hearing argument on the subject, for which plaintiff had no fair opportunity to prepare, the court granted summary disposition to defendants on the basis of the court's newly identified theories.

* * *

I conclude that the trial court's behaviorits disposition sua sponte of issues never before contemplatedwas unjustified, whatever the pressures of the court's busy docket. When any court contemplates sua sponte summary disposition against a party, that party is entitled to unequivocal notice of the court's intention and a fair chance to prepare a response. In my view, a court that fails to afford that constitutionally rooted courtesy has no authority to grant summary disposition. [Id. at 88-90, 492 N.W.2d 460 (emphasis added).]
Applying these principles to this case, it is clear the Court had no authority to rule against plaintiff without affording her notice or an opportunity to prepare and respond to the Court's sua sponte rulings. Like the plaintiff in Haji, the plaintiff here had only the briefest chance at oral argument to respond to Justice Young's and Justice Taylor's thoughts on the GTLA. Even more troublesome is the Court's reversal of McCummings, which it applied to plaintiff without even affording her an opportunity to address the issue at oral argument. Plaintiff followed all controlling precedent and applicable court rules, yet was denied an opportunity to proceed to the merits of her claim on the basis of a procedural bar imposed by the Court in arguable violation of a "constitutionally rooted courtesy." Id. In sum, I write simply to clarify that this denial of rehearing by the Court violates plaintiff's due process rights.[2]
Furthermore, in the motion for rehearing, plaintiff claims that the GTLA does not protect a municipality from an ultra vires act. See Ross v. Consumers Power Co. (On Rehearing), 420 Mich. 567, 591, 363 N.W.2d 641 (1984) ("All governmental agencies [state and local] are immune from tort liability for injuries arising out of the exercise of a non-proprietary, government function. `Governmental function' is defined as any activity which is expressly ... mandated or authorized by constitution, statute, or other law. [MCL 691.1401(f).] *569 An agency's ultra vires activities are therefore not entitled to immunity."). Discrimination on the basis of sexual orientation is not lawful in Detroit and, thus, was not a governmental function. The city did not waive immunity as the Court in Mack suggests; the GTLA simply does not extend to unlawful conduct. In the absence of any statutory or constitutional conflict invalidating the right to be free from sexual orientation discrimination, the cause of action arising out of that right is a vested right; the Court deprived her of that property in violation of her substantive right to due process.
This argument is not without merit. Granting plaintiff the opportunity to plead in avoidance of immunity and argue the substantive issues would remedy any procedural due process violation.[3] Further, because the GTLA does not grant defendant immunity from unlawful actions prohibited by the charter, rehearing would provide the Court with the opportunity to correct its error in Mack. Therefore, I would grant the motion for rehearing.
WEAVER, J., dissenting.
I dissent from the denial and would grant plaintiff's motion for rehearing.
I do not agree that every member of the Court since McCummings v. Hurley Medical Center, 433 Mich. 404, 446 N.W.2d 114 (1989), was decided has "signed an opinion that repudiated [McCummings' ] holding" that governmental immunity must be pleaded as an affirmative defense or waived. Ante at 566, n. 3 (YOUNG, J., concurring). For this proposition, a concurrence to the denial of rehearing cites three opinions involving the highway exception to governmental immunity and one footnote in a dissenting opinion. However, a review of these opinions demonstrates that the issue whether governmental immunity is an unwaivable characteristic of government of which plaintiff must plead in avoidance or an affirmative defense was not raised or addressed.[1] This is because, unlike the city of Detroit in the case now before us on a motion for rehearing, the defendants in the cases cited by the concurrence did raise and pursue on appeal *570 governmental immunity as an affirmative defense. McCummings' holding that the defense could be waived simply was not questioned in those cases. See, e.g., Haliw v. Sterling Heights, 464 Mich. 297, 627 N.W.2d 581 (2001), Hanson v. Board of Co. Rd. Comm'rs of County of Mecosta, 465 Mich. 492, 638 N.W.2d 396 (2002), and Nawrocki v. Macomb Co. Rd. Comm., 463 Mich. 143, 615 N.W.2d 702 (2000).[2] Thus, I cannot agree that the majority's decisions to raise the issue of governmental immunity and to overrule McCummings was fairly "foreshadowed" by these opinions in such a manner that plaintiff was on notice of the "appropriate procedural rule."
In response to other points addressed regarding this motion for rehearing, I offer the following portions from my dissenting opinion, 467 Mich. at 225-230, 649 N.W.2d 47 (2002), in support of plaintiff's rehearing request:
The majority has decided important issues involving governmental immunity that were not raised or briefed by the parties and that are very significant to the people of Detroit and all the people of Michigan. The majority should have insured that it had briefing and heard argument on these issues before deciding them.

A
Without the benefit of briefing or argument, the majority overrules settled precedent 1 to hold that governmental immunity cannot be waived because it is a characteristic of government. In McCummings ..., this Court held that governmental immunity must be pleaded as an affirmative defense. The majority overrules McCummings and holds that immunity is an unwaivable characteristic of government. The parties did not raise or address in any court whether governmental immunity is a characteristic of government or an affirmative defense.2
1 The majority's assertion that McCummings is an "aberration" is their view. However, it was signed by six justices with Justice Griffin concurring separately and has been the law for fourteen years. See, e.g., Scheurman v. Dep't of Transp., 434 Mich. 619, 456 N.W.2d 66 (1990), and Tryc v. Michigan Veterans' Facility, 451 Mich. 129, 545 N.W.2d 642 (1996).
2 Although the city raised governmental immunity as an affirmative defense at the trial court level, the city never specifically addressed immunity relative to plaintiff's charter-based claim of sexual orientation discrimination at any level. The only briefing regarding immunity in the trial court was in response to plaintiff's intentional infliction of emotional distress claim. Plaintiff abandoned that claim in the trial court and thereafter, the city abandoned its immunity claim.
While the general concept of governmental immunity was alluded to in questioning during oral argument before this Court, the questioning did not reference the concept of immunity as a characteristic of government and did not foreshadow an intent to reconsider McCummings. The majority's decision to reach out and overrule a case that was not raised, briefed, or argued is certainly efficient. However, the majority's efficiency in this case forsakes procedural fairness. It is worth emphasis that the majority can only conclude that the city has not waived governmental immunity by overruling McCummings.

*571 I decline the majority's invitation to take a position without briefing and argument on whether governmental immunity is a characteristic of government, an affirmative defense, or some other judicially determined hybrid. These characterizations have significant procedural consequences. It is the role of the Court to respond to issues properly before it and to seek additional briefing and argument on significant matters that may have been overlooked by the parties. This is especially true where the issues are of great importance, such as the issues not briefed or argued in this case, which seriously affect the settled law of this state.
The majority's decision to address and resolve this issue without briefing or argument is inappropriate. Before deciding this significant change in the law of governmental immunity, the Court should have had briefing and argument.

B
The question whether a charter-created cause of action for sexual orientation discrimination conflicts with the governmental tort liability act (GTLA), M.C.L. § 691.1407, a question that the majority concludes decides this case, was not briefed or argued by the parties at any level.3 It is not possible to agree with the majority contention that this specific question was "squarely in front of the parties" when neither party addressed it at any level.... The conflict analysis of the parties and the courts below addressed whether a charter-created cause of action for sexual orientation discrimination conflicted with the Civil Rights Act (CRA). Furthermore, the city only characterized the question of conflict with CRA as one premised on the law of preemption in its brief to this Court. It is again worthy of note that it is only the majority's overruling of McCummings that allows the majority to shift the focus of the conflict analysis from the CRA to the GTLA.
3 The Michigan Constitution and the Home Rule City Act require that home rule city charters not conflict with state law.

C
Although the majority asserts that whether the electors of Detroit intended to create a cause of action to vindicate the charter-created civil right to be free from sexual orientation discrimination is an "irrelevant" inquiry, the intent of the electors, as expressed in the charter is noteworthy.4 After all, the issue presented at the outset of this case was whether the charter language created a cause of action to vindicate the charter's declaration of rights.
4 Further, it should be of interest to the people of Detroit that the city's position in this litigation seeks to disclaim individual rights that its electors deemed worthy of charter protection.
The charter's declaration of rights provides:
"The city has an affirmative duty to secure the equal protection of the law for each person and to insure equality of opportunity for all persons. No person shall be denied the enjoyment of civil or political rights or be discriminated against in the exercise thereof because of race, color, creed, national origin, age, handicap, sex, or sexual orientation." [Section 2.]
The language of § 2 is not ambiguous. It, as would be commonly understood by the ratifiers, secures a set of rights to each person of Detroit. Furthermore, § 8 of the declaration of rights provides:
"The city may enforce this Declaration of Rights and other rights retained by the people." *572 While it can be argued that the permissive "may" of § 8 tempers the city's otherwise "affirmative duty" under § 2 to "insure the equality of opportunity for all persons," it is by no means clear that, pursuant to § 8, the ratifiers intended to diminish the individual rights declared in § 2. More importantly, the unambiguous language of the charter demonstrates that the charter ratifiers, the electors of Detroit, intended that the people of Detroit have the opportunity to seek enforcement of their charter-based rights in the proper court or tribunal. Art. 7, ch. 10, § 7-1007 provides:
"This chapter shall not be construed to diminish the right of any party to direct any immediate legal or equitable remedies in any court or other tribunal."
By these words the ratifiers of the charter would have expected that individuals could also vindicate their charter-declared rights in the proper court or tribunal.5 In other words, it was the express intent of the electors of Detroit to raise the veil of immunity within the city limits with respect to the civil rights declared in the charter's declaration of rights.
5 As reiterated by the United States Supreme Court in Davis v. Passman, 442 U.S. 228, 242, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), "`The very essence of civil liberty,' wrote Mr. Chief Justice Marshall in Marbury v. Madison, 5 U.S. [1 Cranch] 137, 163, 2 L.Ed. 60 (1803), `certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection.'"
The fact that the majority's decision leaves a charter-based right with no remedy6 accentuates the inappropriateness of the majority's decision to dispose of this case on the basis of issues that were not raised, not briefed, and not argued by the parties.
6 Section 8 of the charter declares that the city "may" enforce the declaration of rights, not that it "must" enforce those rights. If the city opts not to enforce the declaration of rights, as it may so choose to do under § 8, the individual Detroiter would have a right with no remedy.
KELLY, J., would grant rehearing.
NOTES
[1] Although the Court of Appeals majority found the procedure "questionable," it declined to address the "procedural irregularities" because it determined that the trial court's conclusions on the merits were erroneous. Haji, supra at 87, 492 N.W.2d 460.
[1] I note that plaintiff was allowed to amend her complaint on remand to plead in avoidance of governmental immunity concerning her sex discrimination claim because sex discrimination is a cause of action recognized under state law. 467 Mich. at 203, n. 20, 649 N.W.2d 47.
[2] Finlay was authored by Justice ARCHER and joined by Chief Justice RILEY and Justices BRICKLEY, CAVANAGH, BOYLE, and GRIFFIN. Justice LEVIN dissented on other grounds.
[3] Every member of this Court has, since McCummings, signed an opinion that repudiated its holding.
[1] MCR 2.111(F)(3) provides:

Affirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118. Under a separate and distinct heading, a party must state the facts constituting:
a. an affirmative defense, such as ... immunity granted by law....
[2] Chief Justice Corrigan claims that this Court in Mack decided "the very issue presented, i.e., whether the city of Detroit's charter provided plaintiff a private cause of action against the city on the basis of sexual orientation discrimination," but that the trial court in Haji did not. Ante at .... However, the purported distinction between Mack and Haji is illusory; this Court "sandbagged" plaintiff for the same reasons identified by the Chief Justice in Haji. It is accurate to state that the trial court in Haji also decided the very issue presented, i.e., whether the court should grant the defendant's motion for summary disposition. Broadly defining the issue in Mack simply cannot protect the Court's action from a label it has earned, i.e, the Court's actions are procedurally unjust.
[3] Justice Young now claims that providing the plaintiff an opportunity to argue her substantive claim would simply be a waste of time "because the underlying right she sought to vindicate could not be lawfully secured under state law." Ante at 564, n. 1. This circular contention ignores the fact that plaintiff was completely denied an opportunity to fulfill the newly mandated procedural obligation to plead in avoidance of immunity, i.e, to argue why the GTLA does not apply. It is this newly imposed procedural change that violates plaintiff's due process rights.

Further, Justice Young's reference to In re Finlay Estates, 430 Mich. 590, 595-596, 424 N.W.2d 272 (1988), is inapposite because, unlike the Court in Finlay, which had the benefit of the parties' unanimous stipulation to an issue of law, this Court had no similar presentation from the parties; the majority has literally and constructively denied plaintiff the opportunity to argue the dispositive issues by imposing a procedural bar that is in direct conflict with our Court rules and precedent. Finally, reference to obiter dictum that laid the foundation for the Court's reversal in Mack does not justify this Court's violation of plaintiff's due process rights.
For further clarification concerning the erroneous assumptions in Justice Young's concurring statement, I direct the reader to my dissent in Mack. More thoroughly addressing the issues here would be repetitive.
[1] Further Klinke v. Mitsubishi Motors Corp., 458 Mich. 582, 581 N.W.2d 272 (1998), did not involve governmental immunity, and the cited dissenting opinion, Justice KELLY footnote, Klinke, p. 615, n. 19, 581 N.W.2d 272, referenced Canon v. Thumudo, 430 Mich. 326, 422 N.W.2d 688 (1988), a case that predated McCummings and that McCummings expressly overruled. Thus, this footnote from a dissenting opinion offers little support to the suggestion that the dissents' signatories "repudiated" McCummings.
[2] In the case consolidated with Nawrocki, Evens v. Shiawassee Co. Rd. Comm'rs, the plaintiff attempted to plead in avoidance of immunity pursuant to the highway exception to governmental immunity, but this Court held that the exception did not impose the specific duty alleged in that case. Nowhere did the opinion address whether governmental immunity was an unwaivable characteristic of government.