RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0079p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 14-1387

GERALD BASS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cr-20704-1—Sean F. Cox, District Judge.

Decided and Filed: April 15, 2015[*]

Before: COLE, Chief Judge; MERRITT and BATCHELDER, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Sanford Plotkin, Detroit, Michigan, for Appellant. Shane Cralle, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

MERRITT, Circuit Judge. Defendant Gerald Bass was convicted of masterminding a fraud conspiracy that used stolen identities and hijacked credit card accounts to purchase over $150,000 in merchandise from Detroit-area retailers. Prior to trial, Bass moved to suppress evidence obtained from a warrant to search his cell phone, arguing that the supporting affidavit

---

[*]This decision was originally issued as an "unpublished decision" filed on April 15, 2015. The court has now designated the opinion as one recommended for full-text publication.

lacked probable cause. The district court denied this motion, and a jury eventually convicted Bass on all counts. Several months later, Bass moved for a new trial based on the purported recantation of a co-defendant who testified against him. Following an evidentiary hearing, the district court concluded that the witness's alleged "recantation" lacked credibility and denied the motion. At sentencing, the district court granted the prosecution's request to vary upward from the advisory Guidelines range and imposed the statutory maximum sentence of 264 months. Bass raises three issues on appeal: (1) Whether the district court erred when it denied Bass's Motion to Suppress evidence recovered from his cell phone; (2) Whether the district court abused its discretion by denying Bass's Motion for a New Trial based on the recanted testimony of a government witness; and (3) Whether the district court abused its discretion by imposing a statutory maximum sentence. For the following reasons, we **AFFIRM**.

## I. Factual and Procedural Background

### A. Investigation & Arrest

In February 2011, the Southeast Michigan Financial Crimes Task Force began investigating claims of "account takeovers," a type of identity theft involving the surreptitious and unauthorized access of credit accounts. To facilitate this fraud, the suspects would obtain an account holder's personal identifying information (name, social security number, date of birth, etc.), contact the credit issuing agency, and use the personal information to add themselves (or others) to the accounts by impersonating the known account holder. Once added, the suspects were able to make fraudulent purchases with proper identification.

The investigation revealed that phone numbers linked to Bass had been used in several account takeovers. Video surveillance also showed several suspects—including co-defendant Isaiah Price—signing receipts for fraudulent purchases at Bass's direction. Additionally, both Price and another co-defendant made statements implicating Bass as the ringleader of the fraud scheme.

Officers arrested Bass at his mother's residence. When they arrived, Bass opened the interior front door but kept the barred security door locked. During this time, the officers observed Bass "laughing and typing unknown information into his cell phone" for several

minutes.  After officers threatened to use a battering ram, Bass finally opened the door and was arrested with his burgundy Kyocera Torino cell phone still in his hand.

## B. Convictions & Sentencing

Trial testimony detailed the extent of Bass's involvement in the fraud conspiracy.  Jerome Bagley[1] testified that after meeting at a gas station, Bass asked if he wanted to make some "quick fast money."  After Bagley agreed, Bass supplied him with fake identification, taught him to impersonate account holders, and drove him to various stores to make fraudulent purchases. Bass paid him $250 for his role in the scheme.

Co-defendant Isaiah Price testified to a similar role, which involved Bass's directing him to purchase certain items and sign the names of the unwitting victims to the store receipts.  Price further testified that he acted at Bass's direction because Bass was the mastermind behind the fraud scheme.  He also identified recordings of Bass's voice impersonating account holders.  Additionally, after defense counsel attempted to attack his credibility on cross-examination, Price denied any involvement with a similar fraud scheme in 2007.

The arresting officer testified that the number for the cell phone seized incident to Bass's arrest matched calls identified by fraud investigators at various banks.  He further identified two dozen fraudulent receipts and surveillance videos showing Bass and Price selecting items for Price to purchase (as well as Price opening a fraudulent account at one retailer).

Isaiah Price purportedly recanted portions of his trial testimony two months after the jury convicted Bass on all four counts.[2]  In a letter to the district court judge, Price claimed he had lied to make prosecutors happy once he realized Bass was their real "target."  In this letter, Price claimed he "lied about a lot of crucial facts that would have made a big difference in front of the jury" and felt remorse "about sending an innocent man to jail."  In a subsequent affidavit, Price

---

[1]Bagley was not named as a co-defendant.  Price and the other co-defendants, however, entered into plea agreements in exchange for their cooperation with the investigation.  Thus, Bass was the only one who proceeded to trial.

[2] Count One:  Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349; Count Two:  Access Device Fraud, Aiding and Abetting, in violation of 18 U.S.C. §§ 1029(a)(2) and 2; Count Three:  Theft of Identity, Aiding and Abetting, in violation of 18 U.S.C. §§ 1028(a)(7) and 2; and Count Four:  Aggravated Identity Theft in violation of 18 U.S.C. § 1028A.

recanted even more of his trial testimony and claimed that: (1) he lied when he testified that certain fraudulent signatures belonged to Bass (because Price actually made all of them); (2) he lied when he testified that Bass had supplied him with fake identification; (3) he lied when he identified Bass's voice on a recording; and (4) the only time Bass received money for anything was for driving Price around while Price committed frauds by himself. Bass moved for a new trial based on these alleged recantations, arguing that his "conviction was secured with the assistance and testimony of Defendant Price."

The district court held an evidentiary hearing in which Price recanted essentially all of his trial testimony. At that hearing, Price's story changed again so that: (1) Bass did not create the fraudulent scheme at the heart of this case; (2) Price—not Bass—was actually the mastermind of the fraudulent scheme; and (3) Bass was just a "small fish" who did nothing but drive the others and receive some stolen merchandise.

The district court concluded that Price's recantation was not credible. Noting that Price initially recanted only a portion of his testimony in his letter—but later recanted *all* of his trial testimony at the evidentiary hearing—the court held that the "vast majority of Price's trial testimony was truthful" and his recantation was credible only in that: (1) Price had been involved in credit card fraud in 2007; and (2) video surveillance showed that Price—not Bass— had signed certain store receipts. Because it concluded that the bulk of Price's testimony at the evidentiary hearing was "pure fiction," the district court denied Bass's Motion for a New Trial.

Based on a criminal history category of VI and a total offense level of 25, Bass had an applicable Guidelines range of 110 to 137 months. Prior to sentencing, however, the prosecution requested a statutory maximum sentence of 264 months.[3] The district judge granted this request, agreeing that an above-Guidelines sentence was required to protect the public from further criminal activity by Bass. In a lengthy discussion, the court noted Bass's 11 prior convictions for theft, dishonesty, fraud, and deceit over the past 20 years—including multiple identity-theft convictions in Michigan. The court thus varied upwards to the statutory maximum and imposed a 264-month sentence. This timely appeal followed.

---

[3]Specifically: 240 months on Count 1 (Conspiracy to Commit Wire Fraud), 120 months on Count 2 (Access Device Fraud, Aiding and Abetting), 180 months on Count 3 (Theft of Identity, Aiding and Abetting), all to run concurrently, and 24 months on Count 4 (Aggravated Identity Theft) to run consecutively as required by statute.

## II. Analysis

### A. Denial of Bass's Motion to Suppress

Although officers seized Bass's cell phone incident to his arrest, they waited to obtain a warrant before searching its contents.[4]  Prior to trial, Bass challenged the sufficiency of the affidavit supporting the search warrant and moved to suppress any evidence seized from the phone.  The district court denied this motion, finding that "the search warrant affidavit was sufficient to establish probable cause and, alternatively, the *Leon* good faith exception would apply."  At trial, the arresting officer testified that his search of the cell phone involved turning it on and taking a picture of the home screen to obtain its number, which matched calls made during some of the account takeovers.  On appeal, Bass essentially makes three separate arguments as to why the search warrant was defective.  We will address each in turn.

### 1.  Whether the Affidavit Lacked Probable Cause

Bass argues the district court erred in upholding the magistrate's finding of probable cause to search his cell phone.  A finding of probable cause is a legal conclusion we review *de novo*.  *United States v. Martin*, 526 F.3d 926, 936 (6th Cir. 2008) (citation omitted).

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend IV.  In determining whether probable cause exists to support a search warrant, the magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

In this case, the affidavit explained that Bass was suspected of crimes in which "cell phones were frequently used by conspirators to text or call each other during the times that the fraudulent activity was taking place."  Noting that Bass had continued to use his cell phone

---

[4]Because this seizure took place in 2011, the issue of whether a cell phone could be searched incident to arrest remained unsettled.  Since then, the Supreme Court has held that the police generally must obtain a warrant before searching the digital contents of a cell phone seized incident to arrest.  *See Riley v. California*, 134 S. Ct. 2473, 2493 (2014).

before opening the security door, the affiant further "believe[d] that Bass was possibly attempting to alert other conspirators of [his] arrest by texting or attempting to call after he was notified of the Arrest Warrant." Thus, under the totality of the circumstances, we believe the affidavit showed a fair probability that evidence of fraud—including contacts between co-conspirators—would be found within the cell phone seized incident to Bass's arrest.

### 2. Whether the Affidavit Established a "Nexus" Between the Place to be Searched and the Items to be Seized

Bass also contends that the affidavit failed to show that *this particular cell phone* likely contained evidence of identity theft. To justify a search, the circumstances must indicate why evidence of an illegal activity will be found in a "particular place." *Gates*, 462 U.S. at 238. Accordingly, "[t]he affidavit must establish a nexus between the place to be searched and things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched." *Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010) (citation omitted).

Here, the affidavit stated that Bass and his co-conspirators frequently used cell phones to communicate. It further noted that Bass was using this particular burgundy Kyocera Torino cell phone when officers seized it incident to his arrest. Thus, the affidavit contained sufficient detail to tie this particular cell phone to Bass's alleged criminal activity.

### 3. Whether the Warrant was Overbroad

Bass further contends that the warrant was overbroad as to the property to be seized from his cell phone. Because he did not raise this particular issue in his Motion to Suppress, we review for plain error. *See United States v. Lopez-Medina*, 461 F.3d 724, 739 (6th Cir. 2006).

In this case, the warrant sought evidence of fraudulent conduct related to charges of "Wire Fraud, Credit Fraud, [and] Identity Theft." The affidavit set forth a substantial basis to believe such evidence existed on Bass's cell phone, but it was unclear as to the particular *format* in which the evidence existed. As the Supreme Court has recently noted, modern cell phones may contain a litany of information, in some cases equivalent to a personal computer. *Riley v. California*, 134 S. Ct. 2473, 2489 (2014). Federal courts, however, have "rejected most

particularity challenges to warrants authorizing the seizure and search of entire personal or business computers," *United States v. Richards*, 659 F.3d 527, 539, (6th Cir. 2011), because "criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity [such that] a broad, expansive search of the [computer] may be required." *Id.* at 538 (quoting *United States v. Stabile*, 633 F.3d 219, 237 (3d Cir. 2011)).

Here, the warrant authorized the search for any records of communication, indicia of use, ownership, or possession, including electronic calendars, address books, e-mails, and chat logs. At the time of the seizure, however, the officers could not have known where this information was located in the cell phone or in what format. Thus, the broader scope of the warrant was reasonable under the circumstances at that time. *See id.* at 541 (quoting *United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004) ("The proper metric of sufficient specificity is whether it was reasonable to provide a more specific description of the items at that juncture of the investigation.")).

### B. Denial of Bass's Motion for a New Trial

Bass contends the district court erred in denying his request for a new trial after co-defendant Isaiah Price allegedly recanted portions of his trial testimony. We review a district court's decision to deny a defendant's motion for a new trial for an abuse of discretion. *United States v. Willis*, 257 F.3d 636, 642 (6th Cir. 2001).

In *Willis*, this Court confirmed that the proper legal standard applied to a motion for a new trial based on the recantation of a government witness is the test set forth in *Gordon v. United States*, 178 F.2d 896, 900 (6th Cir. 1949). Under *Gordon*, a new trial will be granted only if:

> (1) the court is reasonably well satisfied that the testimony given by the material witness is false; (2) without the false testimony, the jury might have reached a different conclusion; and (3) the party seeking the new trial was taken by surprise when the false testimony was given, and was unable to meet it or did not know of its falsity until after the trial.

*Willis*, 257 F.3d at 642-43 (citing Gordon, 178 F.2d at 900).

The record fails to satisfy any of the *Gordon* factors. The district court held that Price's untruthful trial testimony was very limited and only involved statements that: (1) he had not previously been involved in credit card fraud in 2007 (when he had); and (2) a select few signatures on receipts belonged to Bass (when video evidence indicated that Price had made them). Additionally, the vast majority of Price's trial testimony was corroborated by other evidence, including video surveillance, telephone records, audio recordings, and the testimony of numerous other witnesses—all of which served as overwhelming evidence of Bass's guilt. Thus, the very limited untruthful portions of Price's trial testimony would not have altered the verdict. Moreover, Bass cannot demonstrate that he was taken by surprise by any of Price's trial testimony because he testified consistently with interview reports provided to Bass prior to trial. Finally, even if Bass had been surprised, his attorney met it by effectively cross-examining Price regarding those very issues.

### C. Upward Variance to Statutory Maximum Sentence

Bass challenges his statutory maximum sentence as both procedurally and substantively unreasonable. We review these challenges for an abuse of discretion, regardless of whether the imposed sentence is inside or outside the advisory Guidelines range. *Gall v. United States*, 552 U.S. 38, 41 (2007).

#### 1. Procedural Reasonableness

Bass argues that his sentence was procedurally unreasonable because the district court failed to respond to his contention that his recidivism was already reflected in the advisory Guidelines range. He contends that the district court "nearly doubled" his advisory range to the statutory maximum "without an independent rationale for the extreme variance." Def.'s Br. at 11. On appeal, the key question is whether the record makes it clear that "the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc) (internal quotations and citations omitted).

Bass's argument is belied by the record. At the sentencing hearing, the district court considered and denied each of Bass's five objections to the Guidelines calculations. The court

heard arguments from both parties, including Bass's reasons why an upward variance was unnecessary.  The court also discussed Bass's personal characteristics and history, as well as the seriousness of the offense.  Of note, after methodically walking through each of Bass's 13 prior convictions over the past 20 years—including 11 for conduct involving identity theft, dishonesty, fraud, or deceit—the court observed that Bass had no employment record other than criminal conduct despite being "very, very bright," though "very, very manipulative."  Ultimately, the court concluded that Bass had "absolutely no respect for the law" and that "[he] will continue to engage in criminal activity, and continue to engage in credit card fraud and identity theft, and continue to be a real threat to society."

Contrary to Bass's assertions, the district court also walked through the § 3553(a) factors in detail and provided a lengthy explanation as to why an upward variance to the statutory maximum was necessary.  The court weighed each factor and concluded that no sentence could deter Bass from further criminal activity.  The court also repeatedly stressed its "obligation to protect the public from further crimes by [Bass]," finding "no doubt" that Bass would go right back to engaging in credit card fraud and identity theft whenever he is released from prison.  As a result, the district court concluded that an upward variance was required to protect the public from Bass as long as possible.

Finally, the district court spent considerable time explaining its decision to vary upward to the statutory maximum.  *See United States v. Payton*, 754 F.3d 375, 378 (6th Cir. 2014) ("Where the defendant or prosecutor presents non-frivolous reasons for imposing a different sentence . . . [t]he sentencing judge should articulate enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority." (quoting *Rita v. United States*, 551 U.S. 338, 356-57 (2007))).  As discussed above, the district court repeatedly emphasized its "obligation to protect the public" because of Bass's history of an inability to comply with the law.  It noted that Bass "cannot comply, cannot follow the law . . . [, and] continue[s] to engage in the same criminal conduct despite prior convictions."  It stressed that the statutory maximum exists for cases like this, "with individuals like [Bass] who cannot and will not stop engaging in similar criminal activity," and

stated that it imposed the statutory maximum because of its "obligation to protect the public from further crimes by [him]."

## 2. Substantive Reasonableness

Bass also challenges his sentence as substantively unreasonable. A sentence is substantively unreasonable when the district court "selects a sentence arbitrarily, bases the sentence on impermissible factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Abdulmutallab*, 739 F.3d 891, 908 (6th Cir. 2014) (citation omitted). In support of this argument, Bass contends his sentence was substantively unreasonable because his conduct was "garden variety" identity theft and the loss was "small potatoes"—*i.e.*, the district judge erred by varying upwards from the Guidelines range because his crime was "not the worst" or "most egregious" fraud offense ever seen.

Bass essentially argues that the district court failed to employ a "proportionality principle" to distinguish why he needed an above-Guidelines sentence. District courts, however, no longer must show "'extraordinary' circumstances to justify a sentence outside the Guidelines range." *Gall v. United States*, 552 U.S. 38, 47 (2007). Similarly, "we no longer apply a form of proportionality review to outside-Guidelines sentences, which would require the strength of the justification for a departure to vary in proportion to the amount of deviation from the Guidelines." *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). Moreover, as explained above, the district court properly considered all of the § 3553(a) factors and gave ample explanation as to why an upward variance was needed to protect the public (because of Bass's propensity to engage in criminal conduct). *See, e.g.*, *United States v. Lanning*, 633 F.3d 469, 475-76 (6th Cir. 2011) (affirming an upward variance to provide deterrence and protect the public where the defendant "made a living as a thief").

We therefore hold that there was no abuse of discretion.

## III. Conclusion

For the foregoing reasons, we **AFFIRM**.