# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MICHAEL DORVALL COLEMAN,

       Defendant-Appellant.

UNPUBLISHED
December 27, 2018

No. 336663
Oakland Circuit Court
LC No. 2016-257377-FH

---

Before: GLEICHER , P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

Defendant was convicted by a jury of two counts of possession with intent to deliver less than 50 grams of a controlled substance (heroin and cocaine respectively), MCL 333.7401(2)(a)(*iv*),[1] one count of felon in possession of a firearm (felon-in-possession), MCL 750.224f, and three counts of possession of a firearm during the commission of a felony (felony-firearm), third offense, MCL 750.227b(1). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 19 months to 20 years each for the controlled substance and felon-in-possession convictions, to be served consecutive to concurrent prison terms of 10 years each for the felony-firearm convictions. Defendant now appeals as of right. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Defendant's convictions arise from the discovery of cocaine, heroin, and firearms during the execution of a search warrant at an apartment located at 674 Palmer in Pontiac. The police found defendant on the bed in a bedroom of the apartment when they executed the warrant. Baggies containing heroin and crack cocaine were found on a shelf in the bedroom, and two firearms were recovered from in between the mattress and the box spring of the bed.

---

[1] The jury acquitted defendant of the originally charged offenses of two counts of possession with intent to deliver a controlled substance within 1,000 feet of school property, MCL 333.7410(3). However, the jury was instructed that it could consider possession with intent to deliver less than 50 grams of a controlled substance as a lesser included offense on each of those original counts.

Additionally, there was mail addressed to defendant, as well as other drug paraphernalia, located in the bedroom. Two cell phones were also recovered from the bed's headboard. The phones contained text messages that were consistent with the buying and selling of heroin and crack cocaine.

## II. *FRANKS* HEARING

Defendant first argues that the trial court erred by denying his pretrial motion for an evidentiary hearing, pursuant to *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978), for purposes of challenging veracity of the search warrant affidavit and seeking to have the evidence seized as a result of the search suppressed. Defendant argues that he had made a substantial showing that portions of the affidavit prepared by Oakland County Sheriff Detective Jason Teelander were inherently contradictory and thus were made with reckless disregard for their truth.

### A. STANDARD OF REVIEW

Just as we generally review a trial court's decision regarding whether to hold an evidentiary hearing for an abuse of discretion, *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017), we also review for an abuse of discretion a trial court's decision whether to grant a *Franks* hearing when the validity of a search warrant's affidavit is challenged, *People v Martin*, 271 Mich App 280, 309; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes." *Franklin*, 500 Mich at 100 (quotation marks and citation omitted). "The facts supporting the grant or denial of an evidentiary hearing are reviewed for clear error, and the application of the law to those facts is reviewed de novo." *Id.* A factual finding is clearly erroneous if we are "left with a definite and firm conviction that the trial court made a mistake." *Id.* (quotation marks and citation omitted).[2]

### B. LAW

---

[2] We note that in the federal courts, there does not appear to be uniformity among the circuits regarding the standard of review to apply to the appellate review of a lower court's *Franks* hearing decision. Compare, e.g., *United States v McMurtrey*, 704 F3d 502, 508 (CA 7, 2013) (applying clear error review to "the district court's denial of the defendant's request for a *Franks* hearing" but stating further that although the "clear error inquiry is factually based and requires . . . giv[ing] particular deference to the district court, any legal determinations that factor into the court's ruling are reviewed *de novo*"), with *United States v Barsoum*, 763 F3d 1321, 1328 (CA 11, 2014) (adopting the abuse of discretion standard of review for evaluating a district court's denial of a *Franks* hearing but stating further that a "district court's denial of a motion to suppress is a mixed question of law and fact," necessitating clear error review for the district court's factual findings and de novo review for the district court's application of law to the facts). Nonetheless, lower federal court decisions may be persuasive but "are not binding on state courts." *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

The United States and Michigan Constitutions both require, in relevant part, that a search warrant be based on probable cause, supported by oath or affirmation. US Const, Am IV; Const 1963, art 1, § 11.

In *Franks*, 438 US at 155, the United States Supreme Court addressed the question whether "a defendant in a criminal proceeding ever ha[s] the right, under the Fourth and Fourteenth Amendments, subsequent to the *ex parte* issuance of a search warrant, to challenge the truthfulness of factual statements made in an affidavit supporting the warrant[.]" The *Franks* Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id*. at 155-156. The Court in *Franks* summarized the standards a defendant must satisfy to obtain an evidentiary hearing as follows:

> In sum, and to repeat with some embellishment what we stated at the beginning of this opinion: There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue. [*Id*. at 171-172.]

## C. APPLICATION

In this case, the affidavit submitted by Teelander in support of the search warrant provided in relevant part as follows:

> (3) The affiant has controlled the purchase of cocaine from the location twice within the past month, the most recent within the past 48 hours. The controlled purchases were performed with the cooperation of a confidential informant.

(A) On the first occasion the confidential informant contacted a black male and arranged to purchase narcotics. Within minutes after the phone call Affiant observed a black male exit 674 Palmer, and proceed directly to the pre-arranged meet location. Once at the pre-arranged meet location affiant observed the black male conduct a hand to hand drug transaction with the confidential informant.

(B) On this occasion affiant followed the black male, from the pre-arranged meet location directly to 674 Palmer without making any stops in between.

(C) On this occasion the substance alleged by the informant to be cocaine was field-tested by affiant using a Cocaine Reagent Narco Pouch tester and a positive reaction was received for the presence of cocaine.

(D) On this occasion the informant was searched immediately before and after making the purchase with negative results.

(E) On this occasion the affiant observed the confidential informant perform the hand to hand transaction and return to the pre-arranged meet location without stopping at any other location or having contact with any other persons.

(4) The second purchase was performed within the past 48 hours.

(A) On this occasion the confidential informant contacted a black male and arranged to purchase narcotics. Within minutes after the phone call Affiant observed a black male exit 674 Palmer, and proceed directly to the pre-arranged meet location. Once at the pre-arranged meet location affiant observed the black male conduct a hand to hand drug transaction with the confidential informant.

(B) On this occasion affiant observed the black male go directly from the pre-arranged meet location to 674 Palmer.

(C) On this occasion the substance alleged by the informant to be cocaine was field-tested by affiant using a cocaine reagent Narco pouch tester and a positive reaction was received for the presence of cocaine.

(D) On this occasion the informant was searched immediately before and after making the purchase with negative results.

(E) On this occasion the affiant observed the confidential informant perform the hand to hand transaction and return to the pre-arranged meet location without stopping at any other location or having contact with any other persons.

The affidavit also detailed the confidential informant's past history of providing information, including that the confidential informant had never furnished false or misleading information during the time that the affiant had known the confidential informant; that the confidential informant had "provided true and accurate details concerning drug trafficking in the City of

Pontiac," which had been corroborated through other sources and investigations; and that the confidential informant had "purchased narcotics and dangerous drugs over 40 times" during the previous three months, leading to the authorization of nine search warrants.

Before trial, defendant moved for a *Franks* hearing to challenge the veracity of this affidavit, arguing that the affidavit contained false statements that were included either intentionally or with reckless disregard for the truth, such that the affidavit did not demonstrate the requisite probable cause. Specifically, defendant contended that the statements in ¶¶ 3(B), 3(E), 4(B), and 4(E) indicated that following each transaction, the affiant followed the black male from the spot where the transactions allegedly occurred back to 674 Palmer and that the affiant also followed the confidential informant from the transaction location back to the prearranged meeting location. Defendant argued that these affidavit statements were false because it was impossible to follow two people at once. Defendant attached the search warrant and Teelander's search warrant affidavit to the motion, but defendant did not submit any evidence in support of his contention that the statements in the affidavit were false. Instead, defendant relied on his interpretation of how the affidavit statements portrayed the alleged transactions and the supposedly inherent impossibility of such versions of the events.

The trial court addressed the motion at an April 6, 2016 hearing. Defense counsel made oral arguments consistent with those set forth above, particularly emphasizing that the allegedly contradictory statements were important because it was "crucial" for Teelander to establish that the confidential informant received the controlled substance from the individual who had come from 674 Palmer rather than somebody else. Defense counsel further argued that because the affidavit did not explain how it was possible to ascertain that neither the confidential informant nor the black male made any stops between the location of the transaction and their subsequent destinations, the affidavit statements were either untruthful or made with reckless disregard for the truth. Regarding the need for an offer of proof, defense counsel argued as follows:

> Now, the prosecution indicates that we failed to submit an offer of proof or sufficient background, if you will. I'm pointing you to the affidavit itself as a sufficient offer of proof that it lacks the particularity it needs. Even when you read it in a commonsense manner, and giving the difference [sic] to the magistrate that signed the warrant, there's this disconnect and an impossibility that you can't get around without setting it for a hearing. . . . It is appropriate to flesh out from the affiant well, where were you when you were surveilling two different people to be assured they didn't stop anywhere in between? Where were these people— where was the route they took? I think this is ripe for a hearing in all those regards because if you take it out of the affidavit it lacks probable cause.

The prosecutor responded, arguing that *Franks* "does not allow for the fleshing out of things that a Defendant would have liked to have seen in an affidavit" and that "the burden is on the Defendant to come forward with evidence, not surmising." The prosecutor further argued that the statements were not necessarily inconsistent because the affiant could have been in a location where both the black male and the confidential informant could have been observed as they left the transaction location.

The trial court stated that it found much of the language in the affidavit to be "really problematic" and that affidavit was sloppy. However, the trial court still denied defendant's motion for a *Franks* hearing, reasoning that the court's concerns about the affidavit did not "go to whether or not it is apparent or that [defendant had] shown proof that there was a falsehood made" or "that there was a—a reckless disregard for the truth."

On appeal, defendant argues that the trial court's decision was erroneous because he made the required substantial showing that there were questions regarding the veracity of the affidavit relied on to establish probable cause. Defendant maintains that it would have been impossible for the affiant, after the alleged transaction occurred, to simultaneously follow the black male, immediately search the confidential informant, and observe the confidential informant return to the prearranged meeting location. According to defendant, one of these statements contained in ¶¶ 3(B), 3(D), and 3(E) must therefore have been false and included in the affidavit with reckless disregard for the truth.

However, contrary to defendant's argument, defendant failed to make the substantial preliminary showing required under *Franks*. Defendant did not make any offer of proof to support his allegations that the affidavit contained falsehoods. For example, defendant did not support his speculative theory that the confidential informant *could* have obtained the cocaine from a source other than the observed transaction with any evidence purporting to support such a hypothetical. Rather, as is evident from the arguments made in the trial court, defendant's conclusory assertion that the statements were *necessarily* contradictory and false was supported only by "a mere desire to cross-examine" Treelander and thereby attempt to prove that his affidavit contained false statements; this approach is insufficient under *Franks* to entitle defendant to an evidentiary hearing. *Franks*, 438 US at 171. We note that despite defendant's efforts to characterize his interpretation of the affidavit as the only commonsense way to understand the affidavit statements and to cast those statements as inherently contradictory, this is not so. It is conceivable that Teelander could have been situated in a location where his vantage point allowed him to simultaneously observe the door of 674 Palmer, the location where each transaction occurred, and the location where he met the confidential informant afterward. It is true that the affidavit language in this case certainly could have been more precise in describing Teelander's observations and actions, as well as the facts on which he relied to establish probable cause. However, "[a]llegations of negligence or innocent mistake are insufficient" to warrant a *Franks* hearing. *Id*.

Accordingly, defendant has not shown that the trial court's decision to deny his motion for a *Franks* hearing constituted an abuse of discretion.

Additionally, defendant further argues that court should have nonetheless exercised its discretion to grant an evidentiary hearing, even if the preliminary showing required by *Franks* was not met, because the contradictory statements in the affidavit show that fraud was committed. Our Supreme Court has held that "even in the absence of the substantial preliminary showing required by *Franks* a trial court may conduct an evidentiary hearing concerning the veracity of a search warrant affidavit . . . ." *Franklin*, 500 Mich at 111. A trial court's decision to hold such an evidentiary hearing where the preliminary showing required by *Franks* has not been met is a discretionary decision, reviewed on appeal for an abuse of that discretion. *Id*. at 110-111. In making this argument on appeal, defendant relies on the same contentions that he

advanced in support of his argument that he satisfied the preliminary showing required under *Franks*. However, although the trial court in this case could have theoretically determined in its discretion that an evidentiary hearing was warranted, there is no indication, in light of our foregoing analysis regarding defendant's *Franks* issue, that an evidentiary hearing should have been held. Hence, defendant has not demonstrated that declining to grant an evidentiary hearing was a decision that was outside the range of reasonable and principled outcomes.

## III. SCOPE OF SEARCH WARRANT

Next, defendant argues that the search warrant was invalid because it contained overly broad language authorizing the search of any digital or electronic device, including cell phones. Defendant asserts that the warrant should have specified that it was limited to "cell phones used in drug transactions" or particular applications on the cell phones that would reasonably be perceived as pertinent to the search. According to defendant, if not for the overly broad language of the search warrant, the prosecution would have been unable at trial to admit into evidence text messages recovered from the two cell phones that were seized during the search.

### A. STANDARD OF REVIEW

Although defendant raised challenges via pretrial motions in the trial court to the validity of the search warrant and the admissibility of the text messages recovered from the cell phones, he did so on grounds other than arguing that the search warrant language was overly broad. Defendant raises this new argument for the first time on appeal. "For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). "An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993). Thus, defendant failed to preserve this issue for appeal.

This Court reviews unpreserved claims of constitutional error for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. The defendant bears the burden of demonstrating the prejudice required to satisfy the third prong. *Id*. Even if a defendant satisfies all three prongs of the plain error rule, the decision to reverse is within the appellate court's discretion, and reversal is only warranted "when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error ' "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings" independent of the defendant's innocence.' " *Id*. at 763-764 (citation omitted; alteration in original).

### B. DISCUSSION

"A search warrant must describe with particularity the place to be searched and the persons or things to be seized." *Martin*, 271 Mich App at 303, citing US Const, Am IV; Const 1963, art 1, § 11; MCL 780.654. In *Martin*, 271 Mich App at 303-304, this Court observed:

With regards to the description of the place to be searched, [i]t is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended. The purpose of the particularity requirement in the description of items to be seized is to provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure. The degree of specificity required depends on the circumstances and types of items involved. [Quotation marks and citations omitted; alteration in original.]

In the instant case, the search warrant authorized officers to search for and seize the following:

Cocaine, and any other illegally possessed controlled substances; any raw material, product, equipment or drug paraphernalia for the compounding, cutting, exporting, importing, manufacturing, packaging, processing, storage, use or weighing of any controlled substance; proofs of residence, such as but not limited to, utility bills, correspondence, rent receipts, and keys to the premises; proofs as to the identity of unknown suspects such as but not limited to, photographs, certificates, and/or diplomas; prerecorded, illegal drug proceeds *and any records pertaining to the receipt, possession and sale or distribution of controlled substances including but not limited to documents, video tapes, computer disks, computer hard drives, and computer peripherals*; other mail receipts, containers or wrappers; currency, financial instruments, safety deposit box keys, money order receipts, bank statements and related records; firearms, ammunition, and all occupants found inside.

*It is further ordered that any cell phones, computers, personal communication devices, or other devices capable of digital or electronic storage seized by authority of this search warrant* shall be permitted to be searched, and any data that is able to be retrieved therefrom shall be preserved and recorded. [Emphasis added.]

Defendant cites only the second of these paragraphs to support his argument that the warrant's description of the property to be seized was overly broad, and defendant ignores the effect of reading the language in the first paragraph in conjunction with that of the second paragraph. The first paragraph describes, as items to be searched for and seized, "any records *pertaining to the receipt, possession and sale or distribution of controlled substances* including *but not limited to* documents, video tapes, computer disks, computer hard drives, and computer peripherals[.]" (Emphasis added.) This language clearly contemplates the inclusion of cell phones. As the United Supreme Court observed in *Riley v California*, ___US___, ___; 134 S Ct 2473, 2489; 189 L Ed 2d 430 (2014):

The term "cell phone" is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers.

Thus, the first paragraph quoted above from the search warrant in the instant case appropriately limited the description of items to be seized to devices, including cell phones, that *pertained to the distribution of controlled substances*; this is the very limitation that defendant argues should have been included in the warrant. Contrary to defendant's argument, the description in the warrant did not authorize the seizure of *any* cell phone or electronic device but was instead sufficiently particular to "provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure." *Martin*, 271 Mich App at 304 (quotation marks and citation omitted). The second paragraph quoted above, which specifically mentioned cell phones, maintained the same limitation contained in the first paragraph because the second paragraph refers to "any cell phones . . . seized by authority of this search warrant." In short, defendant's overbreadth argument is unavailing because the warrant adequately limited the search and seizure of cell phones to require a connection to the possession, sale, or distribution of controlled substances.

Furthermore, to the extent that defendant also suggests in a cursory fashion that the warrant should have been limited to particular applications on the cell phones that could reasonably be expected to contain evidence related to controlled substance transactions, such a limitation would have been unnecessary. The United States Court of Appeals for the Sixth Circuit has noted that federal courts "have rejected most particularity challenges to warrants authorizing the seizure and search of entire personal or business computers because criminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity [such that] a broad, expansive search of the [computer] may be required." *United States v Bass*, 785 F3d 1043, 1049-1050 (CA 6, 2015) (quotation marks and citations omitted). In *Bass*, the court rejected a defendant's argument that a search warrant "was overbroad as to the property to be seized from his phone." *Id*. at 1049. In reaching this conclusion, the court reasoned as follows:

> Here, the warrant authorized the search for any records of communication, indicia of use, ownership, or possession, including electronic calendars, address books, e-mails, and chat logs. At the time of the seizure, however, the officers could not have known where this information was located in the phone or in what format. Thus, the broad scope of the warrant was reasonable under the circumstances at that time. [*Id*. at 1050.]

In this case, the warrant authorized searching cell phones for "any records pertaining to the receipt, possession and sale or distribution of controlled substances." Like the officers in *Bass*, Teelander and the other law enforcement officers involved in the instant case could not have known which files or applications on the cell phones would contain evidence of drug activity. Moreover, the text message application is clearly one that could reasonably be expected to contain information related to the receipt, possession, sale, or distribution of controlled substances. Accordingly, the fact that the warrant was not limited to particular applications on electronic devices did not make it overbroad. *Id*. at 1049-1050.

Defendant has therefore failed to demonstrate the existence of plain error requiring reversal with respect to the scope of the search warrant in this case.

Defendant additionally makes a related argument that defense counsel's failure to raise this issue in the trial court constituted ineffective assistance of counsel. However, because the

scope of the search warrant was not actually overbroad as claimed by defendant on appeal, defendant's overbreadth argument is without merit. "[F]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 205; 793 NW2d 120 (2010).

## IV. COURT COSTS AND FEES

Next, defendant asks this Court to suspend the collection of assessed costs and fees in this case until after he is paroled because, claiming indigence, he asserts that being required at this time to pay the costs and fees as ordered creates a manifest hardship for him. Defendant was represented at trial by appointed counsel. Following defendant's conviction, the trial court ordered him to pay $408 for state minimum costs, $130 for the Crime Victim Rights Fund, $200 in court costs, and restitution. Defendant was further ordered to reimburse Oakland County for his attorney fees. In January 2017, an order to remit prisoner funds for fines, costs, and assessments was entered stating that defendant owed a balance of $4,253, excluding restitution, and that the Department of Corrections (DOC) was to collect 50 percent of all funds received by defendant over $50 each month. Once the amount collected exceeded $100, those funds were to be sent by the DOC to Oakland County's Reimbursement office. The withdrawal of funds from defendant's prisoner account was to continue until the amount due was paid in full.

### A. STANDARD OF REVIEW

Because defendant did not object to the imposition of costs and fees in the trial court,[3] this issue is unpreserved and our review is for plain error. *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015).

### B. DISCUSSION

Pursuant to MCL 769.1k(1), a trial court at sentencing may impose various costs on defendant, including the "expenses of providing legal assistance to the defendant," MCL 769.1k(1)(b)(*iv*). Defendant does not challenge on appeal this general authority possessed by the trial court. Rather, merely argues that collection of the costs and fees he owes should be suspended because it is currently causing him manifest hardship.

---

[3] Defendant filed a motion in this Court to remand to the trial court in order to "preserve a challenge to the collection of cost [sic] and fees from his prisoner account or for a determination by the trial court of his ability to pay." This Court denied the motion, stating that defendant had "not demonstrated that further factual development of the record or an initial ruling by the trial court is necessary at this time in order for this Court to review the issues on appeal." *People v Coleman*, unpublished order of the Court of Appeals, entered March 1, 2018 (Docket No. 336663). Having reviewed this issue and concluded for the reasons contained in this opinion that defendant has not demonstrated that he is entitled to relief, we similarly reject defendant's request in his appellate brief for remand to the trial court as an alternative form of relief.

Under MCL 769.1*l*, a court is authorized to issue an order to remit such as the one entered in this case; this statute provides in relevant part as follows:

> If a prisoner under the jurisdiction of the department of corrections has been ordered to pay any sum of money as described in section [MCL 769.1k] and the department of corrections receives an order from the court on a form prescribed by the state court administrative office, the department of corrections shall deduct 50% of the funds received by the prisoner in a month over $50.00 and promptly forward a payment to the court as provided in the order when the amount exceeds $100.00, or the entire amount if the prisoner is paroled, is transferred to community programs, or is discharged on the maximum sentence.

In *People v Jackson*, 483 Mich 271, 275; 769 NW2d 630 (2009), our Supreme Court held that "remittance orders of prisoner funds, under MCL 769.1*l*, generally obviate the need for an ability-to-pay assessment with relation to defendants sentenced to a term of imprisonment because the statute is structured to only take monies from prisoners who are presumed to be nonindigent." The Court reasoned that the "statute's monetary calculations necessarily conduct a preliminary, general ability-to-pay assessment before the prisoner's funds are taken." *Id*. at 295. The *Jackson* Court explained further:

> MCL 769.1*l* inherently calculates a prisoner's general ability to pay and, in effect, creates a statutory presumption of nonindigency. The provision only allows the garnishment of a prisoner's account if the balance exceeds $50. Although this amount would be insufficient to sustain a defendant living among the general populace, it is uncontested that a prisoner's "living expenses" are nil, as the prisoner is clothed, sheltered, fed, and has all his medical needs provided by the state. The funds left to the prisoner on a monthly basis are more than adequate to cover the prisoner's other minimal expenses and obligations without causing manifest hardship. Thus, we conclude that § 1*l*'s application makes a legitimate presumption that the prisoner is not indigent.

> We acknowledge that one's indigency is an individualized assessment and that § 1*l*'s presumption does not result from a full individualized analysis of a prisoner's indigency. Accordingly, if a prisoner believes that his unique individual financial circumstances rebut § 1*l*'s presumption of nonindigency, he may petition the court to reduce or eliminate the amount that the remittance order requires him to pay. However, because we adjudge a prisoner's indigency at the time of enforcement on the basis of manifest hardship and because a prisoner is being provided all significant life necessities by the state, we caution that the imprisoned defendant bears a heavy burden of establishing his extraordinary financial circumstances. While we do not attempt to lay out an extensive formal structure by which trial courts are to review these claims, we do direct that they be guided by MCL 771.3(6)(b),[4] which controls the similar situation in which a

---

[4] MCL 771.3(6)(b) provides in pertinent part:

probationer seeks remission of costs owed. Specifically, when reviewing a prisoner's claim, lower courts must receive the prisoner's petition and any proofs of his unique and extraordinary financial circumstances. Further, the lower courts should only hold that a prisoner's individual circumstances warrant amending or reducing the remittance order when, in its discretion, it determines that enforcement would work a manifest hardship on the prisoner or his immediate family. The trial courts are under no obligation to hold any formal proceedings. *They are only required to amend the remittance order* when § 1*l*'s presumption of nonindigency is *rebutted with evidence* that enforcement would impose a manifest hardship on the prisoner or his immediate family. Beyond these basic parameters, we leave it to the trial courts, in their sound discretion, to decide how to adjudicate a prisoner's claim that his individual circumstances rebut § 1*l*'s presumption of nonindigency. [*Id*. at 295-297 (citation omitted; emphasis added).]

In this case, the order to remit in this case comports with the procedure outlined in § 1*l*, but defendant nonetheless argues that enforcement of the order to remit creates a manifest hardship for him. Defendant explains that his main source of income consists of occasional gifts from family and friends, he is currently incarcerated with limited earning potential, and that the few jobs available to him as an inmate "pay far below civilian wages." Defendant further argues that even though prisoners are provided with basic necessities, they are still required to purchase certain other items on their own, such as over-the-counter medicine and toiletries. According to defendant, these items are not discounted to reflect the low prison wages. However, defendant has not explained how his situation differs from any other ordinary prisoner. As our Supreme Court explained, the funds remaining to a prisoner each month based on § 1*l*'s calculation are "more than adequate to cover the prisoner's other minimal expenses and obligations without causing manifest hardship." *Jackson*, 483 Mich at 295. Defendant has not demonstrated any "unique individual financial circumstances" sufficient rebut § 1*l*'s presumption of nonindigency, and he therefore cannot satisfy his heavy burden to show that the remittance order should be amended. *Jackson*, 483 Mich at 296-297. Accordingly, defendant has not established plain error requiring reversal.

---

A probationer who is required to pay costs . . . and who is not in willful default of the payment of the costs may petition the sentencing judge or his or her successor at any time for a remission of the payment of any unpaid portion of those costs. If the court determines that payment of the amount due will impose a manifest hardship on the probationer or his or her immediate family, the court may remit all or part of the amount due in costs or modify the method of payment.

## V.  DEFENDANT'S STANDARD 4 BRIEF

Defendant also raises additional issues in his Standard 4 brief,[5] which we now address in turn.

## A.  PLEA BARGAIN

Defendant first argues that the prosecution abused its discretion by refusing to offer him a more favorable plea bargain.  During a pretrial hearing, the prosecution indicated on the record that there would be no plea offer involving reduced charges because defendant had 10 prior felonies, although it appears that the prosecution had expressed to defendant a willingness to consider agreeing to some form of a conditional plea if defendant pleaded guilty to the original charges.  As previously noted, defendant proceeded to trial, where he was convicted by a jury.  Defendant maintains on appeal that "the prosecution abused its discretion by determining his two prior felony firearm convictions warranted no plea bargain in his current case."  Defendant further argues that the prosecution should have considered the small amount of drugs that were found in the apartment, the fact that he never reached for the firearms under the mattress or otherwise resisted arrest, and his apparent substance abuse addiction as factors warranting a more favorable plea bargain.

Because defendant did not raise this argument in the trial court, it is unpreserved, *Metamora Water Serv, Inc*, 276 Mich App at 382, and our review is limited to plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763-764.

As defendant concedes in his Standard 4 brief, "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."  *Weatherford v Bursey*, 429 US 545, 561; 97 S Ct 837; 51 L Ed 2d 30 (1977); see also *Lafler v Cooper*, 566 US 156, 168; 132 S Ct 1376; 182 L Ed 2d 398 (2012) ("It is, of course, true that defendants have no right to be offered a plea . . . .") (Quotation marks and citation omitted).  Moreover, "[i]t is well settled that the decision whether to bring a charge and what charge to bring lies in the discretion of the prosecutor."  *People v Conat*, 238 Mich App 134, 149; 605 NW2d 49 (1999) (quotation marks and citation omitted).  "The prosecutor is given broad charging discretion, and judicial review of the exercise of that discretion is limited to whether an abuse of power occurred, i.e., whether the charging decision was made for reasons that are unconstitutional, illegal, or ultra vires."  *Id*. (citation omitted).

In this case, although defendant may disagree with the prosecution's decisions with respect to plea negotiations, defendant has not demonstrated that the prosecution abused its discretion in declining to make an offer allowing defendant to plead to reduced charges because defendant has not explained or shown how any of the prosecution's actions were based on reasons that were unconstitutional, illegal, or ultra vires. *Id*.  Accordingly, defendant has failed to show plain error requiring reversal on this ground.

---

[5] See Administrative Order No. 2004-6, 471 Mich c, cii (2004).

## B. JUROR BIAS

Defendant next argues that his right to a fair and impartial jury was violated because the trial court declined to remove a juror for cause when, shortly after jury selection had concluded, the juror expressed doubts about his ability to be fair and impartial knowing that defendant had previously been convicted of a felony.

We review a trial court's ruling on a challenge for cause for an abuse of discretion, giving deference to "the trial court's superior ability to assess from a [juror's] demeanor whether the person would be impartial." *People v Williams*, 241 Mich App 519, 521; 616 NW2d 710 (2000). Similarly, this Court reviews "for an abuse of discretion the trial court's decision whether to remove a juror." *People v Unger*, 278 Mich App 210, 259; 749 NW2d 272 (2008). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. "A trial court's factual findings are reviewed for clear error," which exists only if "the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008) (quotation marks and citation omitted).

"[A] criminal defendant has a constitutional right to be tried by an impartial jury." *Miller*, 482 Mich at 547, citing US Const, Am VI; Const 1963, art 1, § 20. "[J]urors are presumed to be . . . impartial, until the contrary is shown," and the "burden is on the defendant to establish that the juror was not impartial or at least that the juror's impartiality is in reasonable doubt." *Id*. at 550 (quotation marks and citation omitted; ellipsis in original).

In this case, after the jury was empaneled, the trial court received word that a juror had reported that he was unsure whether he could be fair and impartial knowing that defendant had previously been convicted of a felony.[6] The juror was brought back into the courtroom for further voir dire. The court questioned the juror, who stated that he remembered hearing during voir dire that defendant had a prior conviction for a similar felony. The juror's concern was apparently prompted by having a discussion with a potential juror who had been excused from the panel. The court reminded the juror that the only information that had been presented during voir dire, and that would be presented during trial, was that defendant was ineligible to possess a firearm due to a prior felony conviction and not that the prior felony was "similar." Further voir dire was conducted by the prosecution, defense counsel, and the trial court, during which it was reiterated that the jury would not be informed of the nature of the prior felony. Following this further voir dire, the juror indicated that he could be fair and impartial, that he would follow the trial court's instructions, and that he understood that he had to make his decision in the case based on the witnesses' testimony and the trial exhibits.

Specifically, the following exchange occurred between defense counsel and the juror:

---

[6] The prospective jurors had been informed during the course of voir dire that there would be a stipulation entered during trial that defendant had a prior felony conviction.

-14-

[*Defense Counsel*]: Sir, do you feel, as you sit here, that you have any sort of bias against [defendant] just because you know he has a prior felony?

*Juror*: No.

[*Defense Counsel*]: Do you feel like the knowledge that [defendant] has a prior felony is going to keep you from rendering a just verdict or listening to the case?

*Juror*: No.

After the juror left the courtroom, defense counsel asked the trial court to remove the juror for cause. The trial court denied the request, reasoning in relevant part as follows:

I think as a result of this questioning it has become clear that cause is not there, because when provided with the other information, I think he became unequivocal about his ability to be fair and impartial.

"A juror who expresses an opinion referring to some circumstance of the case which is not positive in character, but swears he can render an impartial verdict, may not be challenged for cause." *People v Roupe*, 150 Mich App 469, 474; 389 NW2d 449 (1986);[7] see also MCL 768.10. In the instant case, no clear error occurred because we are not left with a definite and firm conviction that the trial court made a mistake by finding that the juror had unequivocally expressed that he could be fair and impartial. Defendant failed to meet his burden of demonstrating that the juror was not impartial or that there was a reasonable doubt as to the juror's impartiality. *Miller*, 482 Mich at 550.[8] The trial court did not abuse its discretion by declining to remove the juror.

## C. JUDICIAL BIAS

Next, defendant argues that his due process right to a fair trial was violated because the trial judge was biased against him. According to defendant, the trial judge exhibited bias by sua sponte making the parties aware, before the close of the prosecution's proofs, of a recent decision by this Court involving the elements of possession with intent to deliver a controlled substance on or within 1,000 feet of school property, in which the lead opinion concluded that

---

[7] The prospective jurors were sworn in at the beginning of voir dire.

[8] Additionally, to the extent that defendant appears to insinuate that the trial court should have also questioned the other jurors to make sure that their impartiality had not been tainted by talking to the same excused potential juror that had spoken with the juror that defendant specifically challenged, this argument is unavailing because it is based on pure speculation. Defendant has not put forth any evidence to show that any such additional conversations took place, thus failing to meet his burden of showing at least a reasonable doubt regarding the impartiality of any other jurors. *Miller*, 482 Mich at 550. Defendant's apparent argument on this matter is based on pure speculation.

MCL 333.7410(3) "require[s] proof that the defendant specifically intended to deliver a controlled substance to a 'person on or within 1,000 feet of school property or a library.' " *People v English*, 317 Mich App 607, 610, 616-617; 897 NW2d 184 (2016) (opinion by WILDER, P.J.); see also *id*. at 317 (MURPHY, J., concurring) ("Because I conclude that the Legislature intended MCL 333.7410(3) to apply when an offender possesses a controlled substance either inside or outside a school zone with the intent to deliver the controlled substance within a school zone, and not when a controlled substance is possessed inside a school zone with no intent to deliver the controlled substance within the school zone, I concur in the lead opinion."). Notably, during course of this discussion[9] during trial, both defense counsel and the prosecutor responded to the trial judge's statements by indicating their independent familiarity with this Court's decision in *English*.

Defendant maintains on appeal that the trial judge's discussion of the *English* decision was intended to unfairly assist the prosecutor in submitting the evidence necessary to obtain convictions on the charges of possession with intent to deliver within 1,000 feet of school property and to derail defense counsel's strategy of waiting until the close of the prosecution's proof to raise the issue in arguing that the prosecution failed to establish the specific intent element. Thus, argues defendant, the trial judge displayed bias against defendant.

"A criminal defendant is entitled to a neutral and detached magistrate," and a "defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *People v Jackson*, 292 Mich App 583, 597-598; 808 NW2d 541 (2011) (quotation marks and citation omitted). "Judicial rulings, as well as a judge's opinions formed during the trial process, are not themselves valid grounds for alleging bias unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Id*. at 598 (quotation marks and citation omitted). Because defendant did not raise the issue of judicial bias in the trial court, this issue is unpreserved. *Id*. at 597. We therefore review this issue for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

In this case, defendant's argument is premised on the trial court's citation of legal authority involving offenses with which defendant was charged. However, "[i]t is within the inherent power of a court, as the judicial body, to determine the applicable law in each case." *In re Finlay Estate*, 430 Mich 590, 595; 424 NW2d 272 (1988); see also *People v Anstey*, 476 Mich 436, 451-454; 719 NW2d 579 (2006) (discussing "the court's inherent authority to instruct the jury on the law applicable to the case"); *People v Henry*, 395 Mich 367, 373-374; 236 NW2d 489 (1975) (stating that "it is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he shall state to them fully the law applicable to the facts"). As our Supreme Court has explained, a contrary rule could produce absurd results, such as permitting parties to "force a court to apply laws that were in direct contravention to the laws of this state" or allowing parties to "stipulate to laws that were obsolete, overruled, or unconstitutional." *In re Finlay Estate*, 430 Mich at 595. In accordance with these legal principles, it clearly was not

---

[9] This discussion occurred on the record but outside the presence of the jury.

-16-

improper for the trial judge in the instant case to independently ascertain the law applicable to the elements of a crime with which defendant had been charged. The trial court's citation of legal authority does not demonstrate deep-seated favoritism or antagonism, and defendant has thus failed to demonstrate that the trial judge was biased. *Jackson*, 292 Mich App at 598. Defendant has not shown a plain error affecting his substantial rights.

## D. PROBABLE CAUSE TO INCLUDE FIREARMS IN SEARCH WARRANT

Next, defendant argues that the firearms recovered from the apartment should have been suppressed because the search warrant did not sufficiently demonstrate that probable cause existed to believe that firearms would be located in the apartment, and the firearms were therefore seized in violation of the Fourth Amendment. Essentially, defendant makes another attempt to challenge the validity of the search warrant in this case. Defendant did not raise this argument below, and our review of this unpreserved issue is thus for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

Appellate review of a magistrate's decision "requires the reviewing court to ask only whether a reasonably cautious person could have concluded that there was a 'substantial basis' for the finding of probable cause." *People v Whitfield*, 461 Mich 441, 446; 607 NW2d 61 (2000). " '[A] search warrant and the underlying affidavit are to be read in a common-sense and realistic manner. Affording deference to the magistrate's decision simply requires that reviewing courts ensure that there is a substantial basis for the magistrate's conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Id*., quoting *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983).

In this case, the warrant affidavit indicated that Teelander observed two hand-to-hand drug transactions and further described Teelander's relevant training and experience in law enforcement, which included working in an undercover capacity for various law enforcement agencies. The affidavit also stated that Teelander was "aware that drug traffickers commonly keep weapons to protect their supply of drugs and proceeds." Our Supreme Court has held that an officer's observations combined with knowledge gained from the officer's relevant training and experience, as set forth in the warrant affidavit, can be sufficient to provide a substantial basis for finding probable cause to issue a search warrant. See *Whitfield*, 461 Mich at 448. In the instant case, we also conclude that the warrant affidavit, when read in a common-sense and realistic manner was sufficient to provide a substantial basis for concluding that there was a fair probability that firearms related to drug trafficking would be found in the apartment such that probable cause existed to support the inclusion of firearms within the scope of the warrant that was issued. *Id*. at 446. Defendant has not demonstrated plain error requiring reversal.

## E. GREAT WEIGHT OF THE EVIDENCE

Finally, defendant argues that the jury verdict was against the great weight of the evidence because there was no evidence that he knew that the firearms under the mattress existed and he therefore could not have possessed them.

This issue is unpreserved because defendant did not move for a new trial below. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). We therefore review for plain error affecting substantial rights. *Id*.

This Court has previously explained that

[t]he test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial. Further, the resolution of credibility questions is within the exclusive province of the jury. [*People v Lacalamita*, 286 Mich App 467, 469-470; 780 NW2d 311 (2009) (quotation marks and citations omitted).]

For crimes involving possession elements, possession can be actual or constructive. *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012). "The test for constructive possession is whether the totality of the circumstances indicates a sufficient nexus between defendant and the contraband." *Id*. at 91-92 (quotation marks and citation omitted). "Although not in actual possession, a person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing . . . ." *Id*. at 92 (quotation marks and citation omitted). Constructive possession of a firearm occurs when "there is proximity to the [firearm] together with indicia of control." *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000) (quotation marks and citation omitted). "Physical possession is not necessary as long as the defendant has constructive possession." *Id*. (quotation marks and citation omitted). Further, constructive possession may be proven by circumstantial evidence, and it may be joint or exclusive. *People v Hill*, 433 Mich 464, 469-470; 446 NW2d 140 (1989).

In this case, the evidence at trial showed more than just defendant being in close proximity to the place where the firearms were found during the search. When the search warrant was executed, defendant was the sole occupant of the bedroom where the firearms were discovered. They were hidden directly underneath him, between the mattress and the box spring, as he was on the bed. The discovery of pieces of mail addressed to defendant at 674 Palmer supported a finding that defendant lived in the home. Considering this evidence, especially the fact that the firearms were concealed directly beneath defendant when the officers entered the room, there was circumstantial evidence from which it could reasonably be concluded that defendant had constructive possession of the firearms. *Burgenmeyer*, 461 Mich at 438; *Hill*, 433 Mich at 469-470. We cannot say that the evidence does not reasonably support the verdict, and defendant has not made any allegation that there was some improper extraneous influence that led the jury to find that he possessed the firearms. *Lacalamita*, 286 Mich App at 469. Defendant has not demonstrated that the evidence "preponderate[d] so heavily against the verdict that it

would be a miscarriage of justice to allow the verdict to stand," *Id*., and consequently he cannot establish plain error.[10]

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Jane M. Beckering

---

[10] Defendant also makes a cursory assertion that defense counsel's failure to preserve this issue constituted ineffective assistance of counsel. However, because the verdict was not against the great weight of the evidence, defense counsel was not ineffective for failing to make a futile motion for a new trial on this ground. *Ericksen*, 288 Mich App at 205.